# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-1770

———————

Brianna Stephenson,                     *
                                        *
        Plaintiff-Appellant,            *
                                        *
v.                                      *   Appeal from the United States
                                        *   District Court for the
Davenport Community School              *   Southern District of Iowa.
District; Davenport Community           *
School Board; Jim Foy,                  *
individually; William Rettko,           *
individually,                           *
                                        *
        Defendants-Appellees.           *

———————

Submitted:  October 21, 1996

Filed:  April 9, 1997

———————

Before WOLLMAN, LAY, and BRIGHT, Circuit Judges.

———————

BRIGHT, Circuit Judge.

Appellant Brianna Stephenson brings this 42 U.S.C. § 1983 action against the Davenport Community School District, its Board, and two school officials in their individual capacities (Appellees). Stephenson asserts that appellees forced her to remove a tattoo pursuant to the District's regulation prohibiting gang symbols. There is no evidence Stephenson was ever involved in gang activity and she denies the tattoo is a gang symbol. Stephenson claims that the regulation is overbroad and vague, that appellees violated her procedural due process rights, and that the Board failed to adequately train its personnel.

The district court granted summary judgment for appellees and Stephenson appealed. We affirm in part and reverse in part.

## I. BACKGROUND

The facts in this case, for the most part, are not in dispute. For purposes of this summary judgment motion, however, any disputed facts are considered in the light most favorable to Stephenson. Landreth v. First Nat. Bank of Cleburne County, 45 F.3d 267, 268 (8th Cir. 1995).

In February of 1990, Brianna Stephenson tattooed a small cross between her thumb and index finger. She was an eighth grade student in the Davenport Community School District (District) at the time, and wore the tattoo without incident while enrolled in the District for the next thirty months. Stephenson intended her tattoo to be a form of "self expression." She did not consider the tattoo a religious symbol. She also did not intend the tattoo to communicate gang affiliation.

Stephenson eventually enrolled at West High School, within the District, where, despite a learning disability, she worked her way onto the honor roll and served as a home room representative. Her report cards characterize Stephenson as "conscientious & diligent" and a "pleasure to have in class." Jt. App. at 89. Stephenson had no record of disciplinary problems and was never involved in gang activity.

While Stephenson attended West High School, gang activity within the District's schools increased. Students brought weapons to class and violence resulted from gang members threatening other

students who displayed rival gang signs or symbols. Furthermore, gang members attempted to intimidate students who were not members into joining their gangs.

The District worked closely with local police to address these problems. In August 1992, Superintendent Peter F. Flynn sent a letter to District parents that included the District's "Proactive Disciplinary Position K-12." That regulation states that "[g]ang related activities such as display of `colors,' symbols, signals, signs, etc., will not be tolerated on school grounds. Students in violation will be suspended from school and/or recommended to the Board for expulsion." Jt. App. at 39. No definition of "[g]ang related activities" or "`colors,' symbols, signals, signs, etc.," id., exists in the regulation.

On August 31, 1992, Stephenson visited Counselor Wayne Granneman to discuss her class schedule. Granneman noticed Stephenson's tattoo, considered it a gang symbol, and notified Associate Principal Jim Foy. Foy consulted Police Liaison Officer David Holden who, based on a drawing and description of the tattoo, stated his opinion that it was a gang symbol. Aside from the tattoo, there was no evidence that Stephenson was involved in gang activity and no other student complained about the tattoo or considered it a gang symbol.

Foy phoned Stephenson's mother and informed her that Stephenson was suspended for the day because her tattoo was gang- related. Stephenson's parents met with Foy the following morning and agreed that Stephenson would continue to attend school on a temporary basis with the tattoo covered. Foy informed Stephenson's parents that she needed to remove or alter the tattoo, otherwise the school would initiate disciplinary procedures and suspend Stephenson for ten days. Stephenson chose not to alter the tattoo

because she did not want a larger tattoo and feared school administrators or police would also classify it as a gang symbol. She then met with a tattoo specialist who advised her that laser treatment was the only effective method to remove the tattoo.

On September 9, Officer Holden examined Stephenson's tattoo and confirmed his earlier opinion that it was a gang symbol. Holden contacted another officer who, without viewing the tattoo, also considered it a gang symbol.

Principal William Rettko held another meeting on either September 9 or 10[1] with Stephenson, her mother, and Foy. At that meeting, the school officials granted Stephenson an extension until September 25 to remove the tattoo. School officials warned Mrs. Stephenson that if Stephenson did not remove the tattoo by September 25, the School "would suspend her at that time and recommend to the Advisory Council she be excluded from school by the Davenport Board of Education." Jt. App. at 46.

On September 25, Stephenson and her mother again met with Foy and Rettko and confirmed that she was completing laser treatment for removal of the tattoo later that day. The doctor performing the removal "burnt through four layers of . . . skin [and] then [followed up the procedure with] two months of various appointments at which [the] skin [was] scraped off with a razor blade to prevent the bleeding of the tattoo." Jt. App. at 66. The procedure, which cost about $500, left a scar on Stephenson's hand.

_____

[1]The record is unclear on the date of the meeting. See Jt. App. at 46, 75.

Stephenson filed suit. On February 14, 1996, the district court granted summary judgment for appellees and dismissed Stephenson's cause of action. Stephenson appealed.

## II. DISCUSSION

Stephenson brings her claim pursuant to 42 U.S.C. § 1983. That provision states in relevant part:

> Every person[2] who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. To recover under § 1983, Stephenson must demonstrate that appellees deprived her of a right secured by the Constitution while acting under "color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Appellees concede they acted under "color of state law" and only contest Stephenson's assertion of a constitutional deprivation.

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 506 (1969). Nevertheless, "[j]udicial interposition in the operation of the public school system . . . raises problems requiring care and restraint." Epperson v. Arkansas, 393 U.S. 97, 104 (1968).

---

[2]A school district may be considered a "person" for purposes of § 1983 liability. Keckeisen v. Indep. Sch. Dist., 509 F.2d 1062, 1065 (8th Cir. 1975).

-5-

Accordingly, we enter the realm of school discipline with caution, appreciating that our perspective of the public schools is necessarily a more distant one than that of the individuals working within these schools who must "'prepare pupils for citizenship in the Republic. . . . [They] must inculcate the habits and manners of civility as values in themselves conducive to happiness and as indispensable to the practice of self-government in the community and the nation.'" Bethel Sch. Dist. v. Fraser, 478 U.S. 675, 681 (1986) (quoting C. Beard & M. Beard, New Basic History of the United States 228 (1968)).

With these thoughts in mind, we turn to the issues before us. Stephenson asserts that the regulation is void-for-vagueness and overbroad. She also argues that appellees violated her procedural due process rights and that the Board failed to adequately train its personnel. We consider these arguments in turn.

## A. STANDING FOR VAGUENESS CLAIM

Stephenson's vagueness and overbreadth arguments, though related, Kolender v. Lawson, 461 U.S. 352, 358 n. 8 (1983), represent two distinct claims. We first address Stephenson's argument that the regulation violates her fourteenth amendment due process right to adequate notice because it is void-for-vagueness. Before reaching the merits of this issue, however, we must determine whether Stephenson has standing to bring this due process claim and whether her claim is moot.[3]

_____

[3]The dissent suggests that we should not reach the merits of Stephenson's void-for-vagueness challenge for two reasons. First, the dissent asserts that Stephenson "waived [her] claim by agreeing to have her tattoo removed." Infra, at 22. Appellees, however, failed to raise this defense before the district court and failed to raise it in their briefing on appeal. Indeed, this panel first suggested the issue during oral argument.

As a general rule, "we will consider an issue not raised or briefed in this court waived." Bechtold v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997). We see no reason to disturb that rule here. We are a court of review and decline to affirm on grounds not decided by the district court or raised by the parties absent extraordinary circumstances. Furthermore, waiver is "an affirmative defense under Fed.R.Civ.P. 8(c) and must generally be

Appellees argue that Stephenson lacks standing to challenge the regulation as void-for-vagueness because her tattoo does not constitute protected speech.[4]  For purposes of Stephenson's

---

pled or else [it] may be deemed waived."  Bechtold, 104 F.3d at 1068.  We deem that defense waived.

We also emphasize that had Stephenson followed the dissent's suggestion to avoid the lawsuit by utilizing the District's administrative review, she would have been suspended from school for ten days and faced possible expulsion.  Perhaps it would be more accurate to state that the District could have avoided this litigation by allowing students to contest its policies without such serious penalty.

Second, the dissent echoes appellees' argument that Stephenson's claim is moot because she "has long since graduated from high school, and there is no possibility that she might ever again be affected by the regulation."  Infra, at 22.  We disagree. "Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable."  13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533.3, at 262 (2d ed. 1984); Gibson v. DuPree, 664 F.2d 175, 177 (8th Cir. 1981)("[D]amage claims are seldom moot.  A viable claim for damages ensures the existence of a live controversy appropriate for judicial resolution. . . .").  Stephenson's amended complaint clearly states that she requests compensatory and punitive damages.  Jt. App. at 121.  In short, Stephenson's graduation is irrelevant for purposes of mootness because, rather than seeking injunctive relief, Stephenson seeks damages.  McFarlin v. Newport Sp. School Dist., 980 F.2d 1208, 1210-11 (8th Cir. 1992) (plaintiff's graduation from high school mooted her claim for reinstatement on the basketball team, but did not moot her claim for damages for alleged violations of plaintiff's civil rights).

[4]Stephenson's initial assertion that her tattoo represents "political speech" and is therefore protected by the first amendment fails by her own admission.  Significantly, Stephenson does not identify her tattoo as representing any form of religious expression.  Rather, she admits the tattoo was simply "a form of self-expression."  Jt. App. at 63.

In order to determine whether Stephenson's conduct raises first amendment protections, we inquire "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those

-7-

vagueness claim, however, her tattoo need not be grounded in such constitutional protections because the claim is based on adequate notice of proscribed behavior. See, e.g., Smith v. Goguen, 415 U.S. 566, 582 (1974) (holding statute void-for-vagueness without finding that Goguen's actions constituted protected speech); Rios v. Lane, 812 F.2d 1032, 1039 (7th Cir. 1987) (considering void-for-vagueness due process claim "completely distinguishable from and not dependent upon any free speech considerations"). Furthermore, the District regulation implicated Stephenson's liberty interests in governing her personal appearance, cf. Bishop v. Colaw, 450 F.2d 1069, 1075 (8th Cir. 1971) (holding that high school students have liberty interest in determining hair length as part of their personal appearance), and in "refusing unwanted medical treatment." Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 278 (1990).

Appellees also argue that Stephenson's void-for-vagueness claim is moot because the District amended the regulation.[5] We

---

who viewed it.'" Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). Stephenson's tattoo does neither. The tattoo is nothing more than "self-expression," unlike other forms of expression or conduct which receive first amendment protections. See, e.g., Tinker, 393 U.S. at 508 (black armbands worn by students intended to convey opposition to Vietnam War constituted "silent, passive expression of opinion"). Accordingly, we decline to imbue Stephenson's tattoo with first amendment protections.

[5]The District's amended regulation regarding gang activities, see Jt. App. at 108, now defines "gang" consistent with a definition of that term in the Iowa State Code. Iowa Code § 723A.2 and § 723A.3 (1993). The definition in the Iowa Code withstood constitutional challenge on vagueness grounds in state court. State of Iowa v. Walker, 506 N.W.2d 430, 432-33 (1993). Our ruling today states no opinion concerning the constitutionality of the District's new regulation.

disagree. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) (addressing merits of vagueness challenge to original version of amended statute). We decline to render Stephenson's claim moot and allow appellees to insulate themselves from liability simply by amending the regulation. See id. Stephenson's standing to challenge the regulation as void-for-vagueness derives from an actual injury, directly caused by the District's regulation, that can be compensated by a favorable decision of the courts. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

## B. VOID-FOR-VAGUENESS

"The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments." D.C. and M.S. v. City of St. Louis, Mo., 795 F.2d 652, 653 (8th Cir. 1986). A vague regulation is constitutionally infirm in two significant respects. First, the doctrine of vagueness "incorporates notions of fair notice or warning," Goquen, 415 U.S. at 572, and a regulation "violates the first essential of due process of law" by failing to provide adequate notice of prohibited conduct. Connally v. General Constr. Co., 269 U.S. 385, 391 (1926) (citations omitted). In short, a regulation is void-for-vagueness if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its

meaning and differ as to its application . . . ." <u>Id.</u> Second, the void-for-vagueness doctrine prevents arbitrary and discriminatory enforcement. <u>Goguen</u>, 415 U.S. at 573. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis . . . ." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-109 (1972).

Stephenson makes a facial challenge to the District regulation, thus our "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 488, 494 (1982). The regulation's description of forbidden gang activities states:

> Gang related activities such as display of "colors", symbols, signals, signs, etc., will not be tolerated on school grounds. Students in violation will be suspended from school and/or recommended to the Board for expulsion.

Jt. App. at 39. As this litigation demonstrates, common religious symbols may be considered gang symbols under the District regulation. The meaning of Stephenson's tattoo, a cross, is contested by the parties as Stephenson considers it simply a form of "self-expression" while appellees believe it is a gang symbol. A significant portion of the world's population, however, views it as a representation of their Christian religious faith. Indeed, the list of "prohibited" materials under the regulation includes other potential religious symbols. See <u>The City of Harvard v. Gaut</u>, 660 N.E.2d 259, 261 (Ill. App. 1996) (officers testifying at hearing "acknowledged that the six-pointed star is a symbol of Judaism as well as of the gangs affiliated with the Folk Nation"). The District regulation, then, sweeps within its parameters constitutionally protected speech.

-10-

We also note that "[t]he degree of constitutional vagueness depends partially on the nature of the enactment." Video Software Dealers Ass'n v. Webster, 968 F.2d 684, 689 (8th Cir. 1992) (citation omitted). Here, for example, we address a regulation in the public school setting. Accordingly, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." Fraser, 478 U.S. at 686. On the other hand, because the literal scope of the District regulation "is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." Goguen, 415 U.S. at 573; Video Software Dealers Ass'n, 968 F.2d at 689-90 ("A stringent vagueness test applies to a law that interferes with the right of free speech."). Accordingly, while a lesser standard of scrutiny is appropriate because of the public school setting, a proportionately greater level of scrutiny is required because the regulation reaches the exercise of free speech.

**1.**

In order to assist in "determining whether an ordinance is unconstitutionally vague, 'courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and previous applications of the statute to the same or similar conduct.'" D.C. and M.S., 795 F.2d at 654 (quoting Postscript Enters., Inc. v. Whaley, 658 F.2d 1249, 1255 (8th Cir. 1981) (quoting Balthazar v. Superior Court, 573 F.2d 698, 700 (1st Cir. 1978))). Here, there is no prior judicial explanation or previous application of the District regulation to guide us. Thus,

we are left with nothing more than the undefined language of the regulation itself.

The Supreme Court, however, analyzed the common usage of "gang." In Lanzetta v. State of New Jersey, 306 U.S. 451 (1939), the Court held the following statute facially void-for-vagueness:

> Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster.

Id. at 452. The Court observed that "[t]he meanings of [gang] indicated in dictionaries and in historical and sociological writings are numerous and varied." Id. at 453-54. Further, the common law was similarly lacking in guidance in ascertaining its meaning. Id. at 454. Indeed, the Court found no evidence that

> "gang" has ever been limited in meaning to a group having purpose to commit any particular offense or class of crimes, or that it has not quite frequently been used in reference to groups of two or more persons not to be suspected of criminality or of anything that is unlawful.

Id. at 457. The Court concluded that the terms the provision "employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." Id. at 458. The passage of nearly fifty years since Lanzetta has only added to the multiple meanings of "gangs." Experts studying gangs agree with the Supreme Court and consider the term "gang" "notoriously imprecise." Scott Cummings & Daniel J. Monti, Gangs-- The Origins and Impact of Contemporary Youth Gangs in the United

States 278 (1993); Robert K. Jackson & Wesley D. McBride, Understanding Street Gangs 20 (1992) (meaning of "gang activity" is "as varied as the background and perspectives of those attempting to define it").  We find no federal case upholding a regulation, challenged as vague or overbroad, that proscribes "gang" activity without defining that term.  Cf. Gaut, 660 N.E.2d at 263 ("The subject matter of the law's prohibitions is not merely broad, but open-ended and potentially limitless.  The ordinance does not define, list, or explain what constitutes a 'gang symbol' or 'gang colors'; it does not even define 'gang.'").

     Indeed, the Seventh Circuit held a prison regulation virtually identical to the District regulation unconstitutionally vague.  Rios v. Lane, 812 F.2d 1032, 1038 (7th Cir. 1987).  But cf. James v. Iowa, 541 N.W.2d 864 (Iowa, 1995).  In Rios, a prison regulation prohibited "engaging or pressuring others to engage in gang activities or meetings, displaying, wearing or using gang insignia, or giving gang signals."  Rios, 812 F.2d at 1034.  These terms were undefined.  Rios handed another inmate a note card with a handwritten message which prison officials believed represented an attempt by Rios to recruit gang members.  Id.  In fact, Rios merely wished to supply information regarding Spanish-speaking radio stations.  Id.

     The Seventh Circuit held that the regulation was vague as applied to Rios because it "failed to approximate the parameters of fairness" and gave "no prior warning that his conduct might be proscribed . . . .  Indeed, aside from the sparse text of the Rule itself, no material whatsoever was available to Rios describing what conduct was prohibited by the Rule."  Id. at 1038.  The court noted that the regulation "fell far short" of even the minimum requirements for regulations in the prison environment and observed that inmates have the right "to steer away from prohibited conduct,

unentangled by the trappings of poorly delineated prison regulations." <u>Id.</u> at 1039 (citation omitted).

Unlike the prison environment of <u>Rios</u>, the District's regulation is in the public school setting where students are afforded greater constitutional protections.  Both regulations, however, leave "gang" undefined, yet it represents the sole adjective for the prohibited "`colors', symbols, signals, signs, etc."  In fact, we previously observed that the failure to define the pivotal term of a regulation can render it fatally vague.  <u>Video Software Dealers Ass'n</u>, 968 F.2d at 690 (statute void-for-vagueness on its face because, "[w]ithout a definition of 'violence,' the statute lacks any 'narrowly drawn, reasonable and definite standard[]' identifying the expression that is subject to the statute's restriction" (quoting <u>Interstate Circuit, Inc. v. City of Dallas</u>, 390 U.S. 676, 690 (1968)). Accordingly, the District regulation fails to provide adequate notice of prohibited conduct because the term "gang," without more, is fatally vague.

**2.**

The District regulation suffers from an additional defect because it allows school administrators and local police unfettered discretion to decide what represents a gang symbol.  The National Institute of Justice acknowledged that "traditional law enforcement efforts sometimes exacerbate gang problems by overlabeling people as gang members. . . .  Some police departments have recognized this problem and improved their ability to identify gang members. . . .  The key to the approach is to establish a set of restrictive definitions."  Catherine H. Conly, et al., National Inst. of Justice, <u>Street Gangs: Current Knowledge and Strategies</u> 50 (1993).

The District regulation contains no such restricting definitions, thereby failing to remedy the danger of overlabeling.

The Supreme Court emphasized the importance of defining prohibited conduct with specificity. In <u>Goguen</u>, the Supreme Court held a statute attaching criminal liability to anyone "who[] treats contemptuously the flag of the United States" facially void-for-vagueness because it set forth a standard so indefinite that police and juries were free to act based on little more than their own views about how the flag should be treated. <u>Goguen</u>, 415 U.S. at 568-69. The Court noted that:

> [T]here is no comparable reason for committing broad discretion to law enforcement officials . . . . Indeed, because display of the flag is so common and takes so many forms, changing from one generation to another and often difficult to distinguish in principle, a legislature should define with some care the flag behavior it intends to outlaw.

<u>Id.</u> at 581.

Gang symbols, as with display of the flag, take many forms and are constantly changing. <u>See, e.g.</u>, Jackson & McBride, <u>supra</u> at 76-77. Accordingly, the District must "define with some care" the "gang related activities" it wishes students to avoid. The regulation, however, fails to define the term at all and, consequently, fails to provide meaningful guidance for those who enforce it.

Furthermore, there is no evidence District students perceived Stephenson's tattoo as a gang symbol or complained about the tattoo during the thirty months Stephenson had it on her hand. Indeed, the District regulation contains no requirement that students consider a symbol gang-related before disciplinary action is taken.

-15-

In this case, Stephenson underwent medical treatment, incurred expense, and suffered physical injury solely on the basis of the subjective opinion of school administrators and local police who had no other evidence Stephenson was involved in gang activity. See Jackson & McBride, supra at 77 ("[I]t can often be difficult to verify gang membership except through continual observation."). Thus, the essentially unfettered discretion of these individuals placed a high school student in the unenviable position of removing her tattoo by scarring her body or suffering suspension from her educational pursuits for ten days and face possible expulsion. The District regulation, therefore, violates a central purpose of the vagueness doctrine that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Grayned, 408 U.S. at 108.[6]

---

[6]We recognize that "there are limitations in the English language with respect to being both specific and manageably brief . . . ." United States Civil Serv. Comm'n v. National Assoc. of Letter Carriers, 413 U.S. 548, 578-79 (1973); see also, Goquen, 415 U.S. at 581 (recognizing there are "areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision."). The gang problem, although complex, does not present such difficulties. The District's twelve-word attempt to describe the proscribed behavior ("[g]ang related activities such as `colors,' signals, symbols, signs, etc.") is not an adequate effort to provide sufficient notice to students and parents of the conduct the regulation proscribes.

Indeed, evidence that a more precise definition of "gang related activities" can be crafted is contained in the District's amended gang regulation. The new regulation states:

A "gang" as defined in this policy and under Iowa Code 723A means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more criminal acts, which has an identifiable name or identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity. The "pattern of gang activity" means the commission, attempt to commit, conspiring to commit, or solicitation of two or more criminal acts, provided the criminal acts were committed on separate dates or by two or more persons who

-16-

Sadly, gang activity is not relegated to signs and symbols otherwise indecipherable to the uninitiated.  In fact, gang symbols include common, seemingly benign jewelry, words and clothing.  For example, color combinations frequently represent gang symbols.  Gaut, 660 N.E.2d at 261 (police officers testified that the "best-known gang 'colors' were black and gold (Latin Kings and other People Nation affiliates) and blue and black (Folk Nation affiliates)").  Indeed, the colors red and blue are the colors of our flag and the colors of two prominent gangs: the Bloods and Crips.  Baseball caps, gloves and bandannas are deemed gang-related attire by high schools around the country, Paul D. Murphy, Restricting Gang Clothing in Public Schools:  Does a Dress Code Violate A Student's Right of Free Expression?, 64 S.Cal.L.Rev. 1321, 1328 (July 1991), as well as collegiate logos.  Gaut, 660 N.E.2d at 261 (Duke University baseball cap is a Folk Nation emblem).  A male student wearing an earring, Olesen v. Board of Educ. of Sch. Dist. No. 228, 676 F.Supp. 820, 821 (N.D.Ill. 1987), or allowing a shoelace to go untied, Gaut, 660 N.E.2d at 261, is engaging in actions considered gang-related. Even a student who innocently refers to classmates as "folks" or "people" is unwittingly speaking in the parlance of the Midwestern gangs "Vice Lords" and "Black Gangster Disciples."  Jt. App. at 86.  In short, a male student walking the halls of a District school with untied

---

are members of, or belong to, the same criminal street gang.

Jt. App. at 108.

shoelaces, a Duke University baseball cap and a cross earring potentially violates the District regulation in four ways.

Accordingly, the District regulation violates the central purposes of the vagueness doctrine because it fails to provide adequate notice regarding unacceptable conduct and fails to offer clear guidance for those who apply it. A person of common intelligence must necessarily guess at the undefined meaning of "gang related activities." See, e.g., Murphy, supra at 1356 (citing examples of high school gang regulations that offer "very specific" guidelines for proscribed behavior). The District regulation is void-for-vagueness.

## C. OVERBREADTH

Stephenson also argues that the District regulation is overbroad. We need not address the merits of this claim, however, because we agree with appellees, albeit for different reasons, that this issue is moot.

Stephenson challenges the District regulation as facially overbroad. Appellant's Br. at 22-23. "The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." Massachusetts v. Oakes, 491 U.S. 576, 581 (1989). This exception protects the first amendment freedoms of other individuals, not before the court, whose speech may be chilled as a result of the regulation. Id. Stephenson argues that even if her tattoo does not represent speech protected by the first amendment, this exception to traditional standing requirements allows us to consider her overbreadth challenge.

We disagree.  As we noted, <u>supra</u> at 8, the District amended the regulation.  The Supreme Court holds that "overbreadth analysis is inappropriate if the statute being challenged has been amended or repealed."  <u>Oakes</u>, 491 U.S. at 582.  Accordingly, Stephenson's facial overbreadth challenge to the District regulation is moot.  We also decline to hold the regulation overbroad as applied to Stephenson because her tattoo does not merit first amendment protection.  <u>See</u> <u>supra</u>, at 7 n. 3.

### D. PROCEDURAL DUE PROCESS

Stephenson also asserts that appellees violated her procedural due process rights by failing to provide an adequate appeals process. Stephenson must exhaust state remedies for purposes of this claim.  <u>See</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 125-26 (1990).  We need not determine whether Stephenson received all the process she was due because she failed to exhaust her state remedies.

The relevant District regulation states:

7. Due process in all cases will be followed according to Board Policy.

   a. Principal immediately informs parent in writing giving reason for all suspensions.

   b. Principal schedules a meeting as soon as possible with student and parents at which time they have the opportunity to respond to the allegations.

   c. Principal makes decision to re-admit student to school or refer the student to Administrative Advisory Council for expulsion.

   d. A prompt impartial hearing shall be scheduled by written notice to the pupil and parents.

-19-

> e.  The pupil shall be entitled to representation by counsel and have the right to call and cross-examine witnesses.

Proactive Disciplinary Position K-12, Jt. App. at 78. Stephenson concedes that appellees followed sections 7a and b, and that these procedural safeguards satisfy the basic constitutional safeguards for the type of suspension Stephenson confronted. See Goss v. Lopez, 419 U.S. 565, 581 (1975). Stephenson argues that she exhausted her administrative remedies because the principal, pursuant to section 7c, made the decision to re-admit Stephenson to school (or, more accurately, allowed her to remain in school) rather than refer her to the Administrative Advisory Council for further suspension or expulsion.

Stephenson, however, failed to exhaust her administrative remedies because she never availed herself of the District's appeal process to challenge the finding that the tattoo was a gang symbol. Indeed, the district court succinctly summarized the denial of Stephenson's procedural due process claim as follows:

> [T]he full district disciplinary policy that sets forth clearly a seven step procedure for bringing complaints against school officials when a student believes her rights are violated. Moreover, plaintiffs could have pursued the appeal by simply refusing to have the tattoo removed and asking the Administrative Advisory Council or Board to make a final decision. Plaintiffs chose not to take that appeal.

Jt. App. at 5.

We recognize that pursuing an appeal involved significant risks for Stephenson, including a certain ten-day suspension and, in the event of an unfavorable ruling, expulsion. Procedural due process, however, does not guarantee a risk-free appeal process.

Accordingly, we affirm the district court's grant of summary judgment for appellees for purposes of Stephenson's procedural due process claim.

## E. FAILURE TO TRAIN

Finally, we reject Stephenson's argument that the District failed to properly train and instruct its employees.  Section 1983 liability may attach for failure to train, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  <u>Canton v. Harris</u>, 489 U.S. 378, 388 (1989).  Stephenson makes no showing of a failure to train and does not approach a showing of "deliberate indifference" on the part of the District.

## III. CONCLUSION

We affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

WOLLMAN, Circuit Judge, concurring and dissenting.

I agree with the court that Stephenson's tattoo was not protected by the first amendment, that Stephenson's overbreadth claim is moot, that Stephenson's failure to exhaust her state remedies moots her procedural due process violation claim, and that the district court was not guilty of failing to train its employees.

Although I disagree with the court's holding that the regulation in question is void for vagueness, I would not reach that issue, for in the unique circumstances of this case I believe

that Stephenson waived that claim by agreeing to have her tattoo removed. Had Stephenson utilized the procedural steps that would have allowed her to challenge the district's finding that the tattoo was a gang symbol, this lawsuit might well have been averted. Stephenson has long since graduated from high school, and there is no possibility that she might ever again be affected by the regulation. Thus, there is no threatened injury that might otherwise give her standing to challenge the regulation. Cf. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). Accordingly, I would affirm the judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-22-