David **CHALIFOUX**, individually and by next friend through Mildred and Keith Chalifoux, and Jerry Robertson, individually and by next friend through Pam and Mark Harrison

v.

## NEW CANEY INDEPENDENT SCHOOL DISTRICT.

Civil No. 97–1763.

United States District Court, S.D. Texas, Houston Division.

Sept. 3, 1997.

---

Brent Clark Perry, Houston, TX, for Plaintiffs.

Cobby A. Caputo, Schwartz and Eichelbaum, Austin, TX, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HITTNER, District Judge.

Plaintiffs David Chalifoux and Jerry Robertson, students enrolled at New Caney High School in New Caney, Montgomery County, Texas, filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendant New Caney Independent School District ("NCISD") violated their First Amendment rights to free speech and religious expression by prohibiting them, pursuant to the District's ban on "gang-related" apparel, from wearing rosaries outside their clothing while on school premises. Plaintiffs filed their Original Complaint on May 15, 1997, seeking damages and injunctive relief. On July 22 and 23, 1997, this Court held a bench trial. Following the submission of post-trial briefing by the parties, the Court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

During early 1997, Plaintiffs began wearing white plastic rosaries [1] on the outside of their shirts as a means of displaying their religious faith. Plaintiffs wore rosaries for several weeks on the New Caney High School campus without comment from school administrators. Plaintiffs are not members of any criminal gang operating in the NCISD. Moreover, during the period they wore the rosaries, they were never approached by gang members because of the rosaries. Nor did Plaintiffs' display of their rosaries cause any disruptions or altercations at New Caney High School.

On or about March 6, 1997, NCISD police officers Eddie Gampher and Troy Woollen approached Plaintiffs on campus and advised them that they could not continue wearing their rosaries outside their clothing, but that they could wear them inside their shirts where they could not be seen by others. Wootten told Plaintiffs that the school had identified rosaries as "gang-related apparel," and, therefore, their display on campus had been prohibited. Wootten did not accuse Plaintiffs of being gang members or wearing rosaries to identify themselves as gang members. Indeed, Defendants do not dispute that Chalifoux and Robertson are not members of any gang. Rather, Wootten told Plaintiffs that by prohibiting them from displaying their rosaries, he was acting out of concern for their safety.

The NCISD dress code prohibits the wearing of "gang-related apparel ... in school or at any school-related function." The dress code is outlined in a Student Handbook. To inform students of the parameters of the prohibition on gang-related apparel, the Handbook states, "A sample list of specific items that law enforcement agencies consider gang-related is available in the principal's office." However, the evidence at trial indicated that the New Caney High School principal's office does not maintain a list of gang-related apparel. The only list of prohibited apparel published by NCISD, which is found

---

**1.** Webster's Dictionary defines "rosary" as:
 [A] string of beads used in counting prayers; *specif.:* a string of beads by which the prayers of the Roman Catholic rosary are counted.

*Webster's Third New International Dictionary* 1974 (3d ed.1986).

in the Student Handbook, does not include rosaries. The Handbook states, *inter alia:*

> The following gang-related apparel has been prohibited in school or at any school-related function:
>
> 1. Oversized apparel, including baggy pants which are worn low on the waist; overalls with one strap unfastened; pants that are cut off below the knees and worn with knee socks. (Pants should fit at the waist and have properly sewn hems).
> 2. Any attire which identifies students as a group (gang-related) may not be worn to school or school-related activities.
> 3. Baseball caps, hair nets, bandanas, sweatbands.

Charles York, the principal of New Caney High School, testified that because gangs frequently change their identifying symbols, the list of prohibited gang-related items in the Student Handbook only is meant to be a representative list. York also testified that his office has available for distribution to students and parents various materials prepared by NCISD's police department which contain information on gangs and gang-related apparel. However, none of the materials contain a list of specific items the school prohibits as gang-related, and none mention rosaries.

Wootten is the "Gang Liaison Officer" for the NCISD Police Department. In his position, he investigates gang activity in the school district and is responsible for determining what is and is not "gang-related apparel." Once Wootten determines, based on his investigation, that a particular item is "gang-related," Wootten informs York who then decides whether to prohibit the item. While the evidence showed that the NCISD Police Department, and Wootten in particular, heavily influences the administration's determination of what should be classified as "gang-related apparel," the Police Department does not have the authority to enforce the school's dress code. Despite the fact that NCISD police officers are not charged with enforcing the dress code, it was Wootten who approached Chalifoux and Robertson on March 6, 1997, and stopped them from wearing their rosaries outside their shirts.

Wootten testified that he classified rosaries as gang-related apparel after receiving information that members of the "United Homies," a gang operating within NCISD, were wearing rosaries as identifying symbols. The information upon which Wootten acted included a statement in February 1997, from an admitted member of the United Homies who told him that he was wearing rosaries as a gang symbol. Later in February 1997, Wootten stopped a vehicle off campus containing five members of the United Homies for violating traffic laws. Two of the individuals in the car were wearing rosaries. On one occasion, York observed three students known to be gang members wearing rosaries on campus and asked them to stop wearing the beads outside their clothing. Based upon these incidents, Wootten, and subsequently York, determined that wearing rosaries as a necklace outside the shirt should be prohibited under the District's ban on gang-related apparel. Pursuant to that policy, Wootten and York prohibited, and continue to prohibit, Plaintiffs from wearing their rosaries outside their shirts on school premises.

Any conclusion of law which should be construed as a finding of fact is hereby adopted as such.

## CONCLUSIONS OF LAW

Plaintiffs seek injunctive relief and damages pursuant to 42 U.S.C. § 1983 for the alleged violation of their First Amendment rights to free exercise of religion and free speech.

### I. FREE SPEECH CLAIM

#### A. Is Plaintiff's Speech Protected?

 In a free speech claim, the initial task for the Court is to determine whether the speech at issue is entitled to protection under the First Amendment, and if so, to what level of protection the speech is entitled. The First Amendment protects private, religious speech. *See Widmar v. Vincent,* 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). Moreover, it is well-settled that the First Amendment protects

not only verbal and written expression, but also symbols and conduct that constitute "symbolic speech." *See Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731(1969) (wearing of armband for purpose of expressing certain political view constitutes symbolic speech protected under the First Amendment). Symbolic speech is protectible under the First Amendment if the person displaying the symbol intends to convey a particularized message and there is a "great likelihood" that the message will be understood by those observing it. *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974).

The uncontested evidence at trial demonstrated that Plaintiffs wore their rosaries with the intent to communicate their Catholic faith to others. However, Defendants argue that observers were not likely to understand Plaintiffs' intended message. According to Defendants, many non-Catholics are not familiar with the rosary and, in any event, even Catholics or persons familiar with the rosary would not understand plaintiffs' message because the rosary is used as an aid to prayer, not as a necklace.

■ Defendants read Plaintiffs' religious message too narrowly. Even assuming that some persons are not familiar with the rosary, undoubtedly they are familiar with the crucifix attached to the center of the rosary, which is recognized universally as a symbol of Christianity. Accordingly, there is a great likelihood that those persons unable to associate Plaintiffs' rosaries with Catholicism nevertheless, will understand that Plaintiffs are Christians. Moreover, the evidence at trial showed that wearing a rosary as a necklace is not so abnormal that persons familiar with the rosary would be unlikely to understand Plaintiffs' religious message. Therefore, the Court finds that the symbolic speech at issue in this case is a form of religious expression protected under the First Amendment.

## B. What Analysis Applies?

■ The parties' legal arguments at trial and in their post-trial briefing reflect a fundamental disagreement over the standard this Court should apply in analyzing Plaintiffs' free speech claim. Plaintiffs contend that *Tinker v. Des Moines Ind. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), provides the proper level of scrutiny. At issue in *Tinker* was the constitutionality of a school's prohibition on wearing black armband on campus to protest the Vietnam War. After stating that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the Court set out a stringent standard requiring the school to show that the prohibited speech would "materially and substantially interfer[e]" with appropriate discipline in the operation of the school before the prohibition could be sustained. *Id.* at 508, 513, 89 S.Ct. at 737, 740 (quoting *Burnside v. Byars,* 363 F.2d 744, 749 (5th Cir.1966)). Because the record did not reveal that the armband caused any disruption or interference with school activities, the Court struck down the prohibition. *Id.* at 514, 89 S.Ct. at 740–41. The Court justified its broad protection of the student's symbolic speech, noting that the use of the armband to convey a message was "closely akin to pure speech." *Id.* at 505, 89 S.Ct. at 736.

■ Plaintiffs in this case contend that their wearing of rosaries was "pure speech" to which *Tinker* 's requirement of a "material and substantial interference" applies. Defendants, on the other hand, point to *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) as support for their contention that a less stringent test applies to NCISD's regulation of Plaintiffs' speech. In *O'Brien,* the plaintiff had been convicted under a Massachusetts statute for burning his draft card during a public demonstration. The plaintiff then challenged the statute as an unconstitutional restriction of symbolic speech protected by the First Amendment. In upholding the restriction, the Court stated:

> [W]hen "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms.

*Id.* at 376, 88 S.Ct. at 1678. The Court held that a governmental regulation on "speech-plus-conduct" expression is constitutional if: (1) it is within the constitutional power of the Government; (2) it furthers an important government interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on First Amendment freedoms is not greater than is essential to the furtherance of that interest. *Id.* Applying this standard, the Supreme Court held that the state's interest in preventing the destruction of draft cards was sufficient to justify the incidental restriction on the plaintiff's anti-war message.

■ In this case, Defendant contends that because NCISD's ban on wearing rosaries outside the shirt is not intended to suppress the specific religious content of Plaintiffs' message, but is intended to restrict gang activity on school premises, the less stringent test set out in *O'Brien* applies.[2]

In this Court's view, the facts of this case do not fall precisely into either test. *O'Brien* does not clearly apply because, as Plaintiffs argue, the speech at issue is similar to the "pure speech" analyzed in *Tinker*. As stated before, *O'Brien* rested on the premise that a regulation aimed at restricting the conduct portion of a speech-plus-conduct message was entitled to additional deference. However, where pure speech is involved, there is no conduct element for the government to prohibit. Accordingly, *O'Brien* appears to be inapplicable. This case is also not an exact *Tinker* case, because, as Defendants point out, NCISD's intent in enacting the ban on rosaries was not to restrict Plaintiffs' religious message.

■ In *Goguen v. Smith*, 471 F.2d 88, 99 (1st Cir.1972), the court analyzed whether *Tinker* or *O'Brien* should apply to a claim challenging the constitutionality of a Massa-

chusetts flag desecration statute. While discussing situations in which common symbols may be considered "pure speech" under *Tinker*, the court stated:

> When more utilitarian objects such as draft cards are involved in conduct, courts have to decide when such conduct becomes symbolic speech.
>
> . . .
>
> We do not have to determine generally at what point that which is often called conduct becomes akin to pure speech. But when the object is a pure symbol, such as the flag in *Halter*, the cross, the Star of David, the crescent, the swastika, the hammer and sickle, the red flag in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), or the black armband in *Tinker*, any individualized activity with regard to it outside of the purely logistical activity of maintaining or storing of it is bound to convey a message of fealty or revulsion and is "closely akin to pure speech."

*Id.* 471 F.2d at 99. The Court then stated that because the display (or desecration) of a flag constituted "pure speech," *Tinker*, not *O'Brien*, applied. *See id.* at 100 n. 18. Like the flag and other religious symbols referenced in *Goguen* and the armband in *Tinker*, Plaintiffs' rosaries are "akin to pure speech." Accordingly, the Court will apply *Tinker*.

■ Pursuant to the standard in *Tinker*, Defendants must show that Plaintiffs' religious speech caused a substantial disruption of or material interference with school activities. *Tinker*, 393 U.S. at 513, 89 S.Ct. at 740. Moreover, even in the school setting, more than mere speculation about disruption and interference is required: "[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508, 89 S.Ct. at 737; *see also Alabama & Coushatta Tribes*, 817

**2.** Defendants have also urged this Court to apply the forum-based analysis used by the Supreme Court in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). There, the Supreme Court distinguished *Tinker* by differentiating between "personal expression that happens to occur on the school premises" and expressive activities that are "sponsored" by the school and "may fairly be characterized as

part of the school curriculum...." *Id.* at 271, 108 S.Ct. at 570. An infringement of "school-sponsored speech" will be upheld as long as the actions of educators are "reasonably related to legitimate pedagogical concerns." *Id.* Because this case involves speech that happened to occur on the school campus, and was not school-sponsored, the Court finds *Tinker*, not *Hazelwood*, provides the proper standard.

F.Supp. at 1334 (anticipation of disruption due to Native American student's long hair insufficient to uphold school's restriction on hair length).

 In this case, although Plaintiffs wore their rosaries outside their shirts for several months, they were never misidentified as gang members nor approached by gang members. There also was no evidence that they attracted the attention of other students because of their rosaries. In *Tinker*, even though several students made hostile remarks to the Plaintiffs because of their armbands, the Court found that there was no disruption sufficient to uphold the school's prohibition. Here too, Defendants have failed to show any evidence of hostility from students at New Caney High School or any other threat of interference with school safety. Moreover, the only evidence presented by Defendants of gang members wearing rosaries on campus was one incident over a span of several months in which three students, all siblings, wore rosaries on campus as an alleged gang identifier. The remaining two incidents in which alleged gang members were seen wearing rosaries occurred off campus. Accordingly, the Court finds that there was insufficient evidence of actual disruption at New Caney High School, or that there was substantial reason for NCISD to anticipate a disruption, to justify the infringement on Plaintiffs' religiously-motivated speech.[3]

## II. VOID FOR VAGUENESS

 Plaintiffs also argue that the school's ban on "gang-related apparel" is void for vagueness. A regulation is void on its face when, as a matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v.*

General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The void for vagueness doctrine also prevents arbitrary and discriminatory enforcement. *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis ... ." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

Initially, Defendants argue that the void for vagueness doctrine is inapplicable to this case. Specifically, Defendants contend that because Plaintiffs were not actually disciplined for their violation of the ban on gang-related apparel, they were not deprived of a property or liberty interest subject to due process considerations. In *Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303 (8th Cir.1997), the Eighth Circuit applied the void for vagueness doctrine to facts strikingly similar to the instant case. In *Stephenson*, a public high school student brought suit against the school district alleging that the school's ban on gang symbols, under which she was forced to remove a tattoo from her hand, was void for vagueness. In rejecting the defendant's contention that the plaintiff had no standing to assert a void for vagueness claim, the Court ruled, in part, that the doctrine was triggered because the district's regulation implicated the plaintiff's liberty interest in her personal appearance. *See id.* at 1307. However, also relevant is the fact that under the school's regulation, the plaintiff faced suspension or expulsion. *See id.* at 1305–06. Accordingly, the regulation in *Stephenson* also implicated the plaintiffs property interest in attending public school. *See Goss v.*

3. Alternatively, even if the Court applies the test in *O'Brien*, NCISD's prohibition on wearing rosaries fails. Under the fourth requirement of the *O'Brien* test, the Court must determine whether the restriction on the Plaintiffs' First Amendment freedoms is greater than is essential to the furtherance of the school's important interest. *O'Brien*, 391 U.S. at 376, 88 S.Ct. at 1678–79. As noted *infra* in the analysis of Plaintiffs' free exercise of religion claims, the minimal evidence of gang members wearing rosaries on the New Caney High School campus causes this Court to question the effectiveness of the ban on rosaries in reducing gang activity. Moreover, although Defendants insist that they have not acted with the intent to burden Plaintiffs' message, but only their method, here "the medium is the message and to suppress the medium is to censor the message." *Goguen v. Smith*, 471 F.2d at 104 (citation omitted). Thus, while the burden on Plaintiffs' symbolic speech is considerable, the ban on rosaries does not appear to this Court to be an essential or effective means of furthering the school's interest in reducing gang activity.

*Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975).

█ In the instant case, pursuant to NCISD's "Discipline Plan and Code of Student Conduct," an initial dress code violation constitutes a "Level II" offense, subject to, among other punishments, in-school suspension and disciplinary probation. Repeated dress code violations are "Level III" infractions, which also may result in an in-school suspension. Repetition of a Level III violation is a "Level IV" violation, warranting suspension from school, or in certain circumstances, expulsion. Accordingly, under the disciplinary scheme at NCISD, Plaintiffs in this case, like the plaintiff in *Stephenson,* faced a potential deprivation of their property interests in attending public school. Therefore, they may invoke the void for vagueness doctrine.

Plaintiffs argue that, under the first prong of the void for vagueness doctrine, the NCISD ban on gang-related apparel fails to define the conduct it prohibits with sufficient specificity to apprise an ordinary person of its requirements. Defendants argue that school administrators need a certain amount of discretion to maintain order on a daily basis, a more relaxed standard should be applied in analyzing the sufficiency of the regulation at issue.

█ Violence upon and intimidation of students in public schools is unacceptable to parents and the public in general. Reasonable measures may be employed by school districts, administrators and teachers to ensure the safety of children and to permit them to pursue their learning experience. Accordingly, this Court does not doubt the need for school officials to have flexibility in handling the daily problems that arise in public school districts. Because of the need for flexibility, "school disciplinary rules need not be. as detailed as a criminal code which imposes criminal sanctions." *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 3166, 92 L.Ed.2d 549 (1986). However, where, as here, the District's regulation reaches First Amendment free speech and free exercise rights, "the doctrine demands a greater degree of specificity than in other contexts." *Goguen,* 415 U.S. at 573, 94

S.Ct. at 1247; *see Stephenson,* 110 F.3d at 1309 (citing *Goguen* and holding that despite the school setting, a "proportionately greater level of scrutiny is required because the regulation reaches the exercise of free speech.") With the foregoing considerations in mind, the Court turns to the language of the school's ban on gang-related apparel.

█ The Student Handbook defines "gang-related apparel" as "[a]ny attire which identifies students as a group (gang-related)." This definition reveals little about what conduct is prohibited by NCISD. It is a well-recognized principle of language construction that it is inappropriate to define a word by using that same word in the definition. Accordingly, because NCISD defines "gang-related apparel" as attire which is "gang-related", the District's definition is ambiguous. Moreover, the terms "any attire which identifies students as a group" modify "gang-related apparel" in such a way that it could include numerous extracurricular groups on campus that use certain attire or symbols for identification.

The Student Handbook does list several specific items of clothing that are considered "gang-related," including baseball caps, baggy pants and bandanas. However, rosaries are not included on the list. Additionally, although the Student Handbook states that a list of gang-related apparel is available in the principal's office, York testified that his office does not have such a list. Indeed, NCISD and New Caney High School made the deliberate decision not to compile a list, contending that it would be impractical due to gangs' continual adoption of different identifying attire and symbols. The Court in *Stephenson* addressed the same issue, but came to the opposite conclusion: "Gang symbols, as with the display of the flag, take many forms and are constantly changing. Accordingly, the District must 'define with some care' the 'gang related activities' it wishes students to avoid." *Id.* at 1310 (citations omitted). In this Court's view, it would not, as NCISD claims, be overly burdensome for the District to provide a definite list of prohibited items and to update that list as needed.

Plaintiffs also argue that the NCISD regulation is void for vagueness because, as written, it encourages arbitrary enforcement by persons who do not have policymaking authority. In striking down the school's regulation on gang activity, the Court in *Stephenson* stated, "The District regulation suffers from an additional defect because it allows school administrators and local police unfettered discretion to decide what represents a gang symbol." *Stephenson*, 110 F.3d at 1310; *see also Smith v. Goguen*, 415 U.S. at 575, 94 S.Ct. at 1248 (striking down criminal statute restricting flag desecration as facially void for vagueness because it allowed "policemen, prosecutors and juries to pursue their personal predilections.") Under Texas law, only the Board of Trustees has policymaking authority in the State's public school systems. *See Gonzalez v. Ysleta Indep. School Dist.*, 996 F.2d 745, 752 (5th Cir.1993). Although the Board of Trustees of NCISD hears appeals or grievances by students wishing to contest the school's dress code, there is no evidence before the Court to show that the Board of Trustees has any input into the initial classification of items as gang-related apparel.

With respect to the classification of rosaries as gang-related apparel, the evidence showed that after Wootten told York that he believed rosaries were gang-related, York did no independent investigation of Wootten's conclusions; rather, he accepted the opinion "at face value." When asked to identify the NCISD list that includes rosaries as gang-related apparel, York agreed that the only list is the one "in Officer Wootten's head." In fact, the NCISD Student Handbook expressly delegates the setting of the boundaries of its definition of "gang-related apparel" to law enforcement officials wherein it states: "A sample list of specific items *that law enforcement agencies consider gang-related* is available in the principal's office." Therefore, not only does the regulation at issue fail to provide a definition sufficient to guide officials' enforcement, it acknowledges that law enforcement officials will decide what represents gang-related apparel or symbols. Because law enforcement officials such as Wootten set the initial standard as to what constitutes gang-related apparel, and

because it is York's practice to accept such classifications at face value, NCISD law enforcement officials have the apparent authority to ban any symbol or speech, even if religious in nature, according to their own discretion.

In sum, because the NCISD Student Handbook lacks a sufficient definition for "gang-related apparel," and because rosaries are not included on any list of gang-related apparel, the NCISD's regulation failed to provide adequate notice to Plaintiffs regarding prohibited conduct. Moreover, NCISD has provided excessive discretion to law enforcement officials in defining the parameters of its ban on gang-related apparel. Therefore, the prohibition on gang-related apparel is void for vagueness.

## III. OVERBREADTH

Plaintiffs also challenge NCISD's ban on gang-related apparel as overbroad. A regulation is constitutionally overbroad if it (1) prohibits a substantial amount of constitutionally-protected freedoms, when judged in relation to the regulation's "plainly legitimate sweep," *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); and (2) is not susceptible to a limiting construction that avoids constitutional problems. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). While at first glance this case might seem appropriate for overbreadth analysis, a closer look at Plaintiffs' claims reveals that the overbreadth doctrine does not apply. The overbreadth doctrine enables a plaintiff to challenge a statute where it infringes on *third parties* who are not parties to the action. Accordingly, "[a]n overbreadth challenge is not appropriate if the first amendment rights asserted by a party attacking a statute are essentially coterminous with the expressive rights of third parties." *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir.1992).

In this case, Plaintiffs have made a substantive challenge to the language of NCISD's regulation as it applies to their First Amendment rights to free speech and religious exercise. They cannot also chal-

lenge the regulation as overbroad on grounds that the regulation may affect *third parties'* rights to free speech and religious exercise. *See International Society of Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge,* 876 F.2d 494, 499–500 (5th Cir.1989) (rejecting overbreadth challenge by Plaintiffs who also asserted substantive claim that the regulation was unconstitutional as applied to their protected speech). *Compare City of Harvard v. Gaut,* 277 Ill.App.3d 1, 214 Ill.Dec. 68, 72, 660 N.E.2d 259, 263 (2 Dist.1996) (where gang member wore Star of David as gang-identifier, not as religious symbol, overbreadth challenge to statute prohibiting gang apparel was appropriate based on the regulation's infringement on First Amendment rights of third party non-gang members).

## IV. FREE EXERCISE OF RELIGION CLAIM

█ Plaintiffs also assert a claim under the free exercise clause of the First Amendment. To establish a free exercise claim under the First Amendment, Plaintiffs must demonstrate that they have a sincerely held religious belief that is burdened by the school's regulation. *See Alabama & Coushatta Tribes v. Trustees of Big Sandy Ind. Sch. Dist.,* 817 F.Supp. 1319, 1332 (E.D.Tex. 1993), remanded without comment, 20 F.3d 469 (5th Cir.1994).

█ Defendant contends that Plaintiffs' act of wearing rosaries does not meet the threshold for First Amendment protection because wearing the rosary as a necklace is neither a requirement of orthodox Catholicism nor a common Catholic practice. Precedent supports a finding that Plaintiffs' form of religious practice is entitled to First Amendment protection. In *Church of the Lukumi Babalu Aye v. Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 2225–26, 124 L.Ed.2d 472 (1993), the plaintiff challenged a state ordinance restricting their right to practice animal sacrifice as a method of religious observance. In considering the threshold question of whether the practice was entitled to protection under the First Amendment, the Supreme Court stated that "[a]lthough the practice of animal sacrifice

may seem abhorrent to some, 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection.' " *Id. quoting Thomas v. Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981). Noting that there was no factual dispute that the Plaintiffs chose to perform animal sacrifices for "religious reasons," the Court held that the practice was entitled to First Amendment protection. *See also, Alabama & Coushatta Tribes,* 817 F.Supp. at 1332 (holding that Native American's desire to wear long hair was sincerely held religious belief entitled to protection under free exercise clause even though practice was not fundamental tenet of Native American religious orthodoxy).

█ In this case, the facts clearly showed, and Defendants do not dispute, that Plaintiffs wore their rosaries for religious reasons. Moreover, the rosary is deeply rooted in orthodox Catholic beliefs. Its use by Catholics is unique among all Christian denominations. Plaintiffs' decision to wear the rosary as a means of *emphasizing* their Catholic faith should not be viewed, from a legal perspective, as nonreligious or abnormal. This is not a situation where a person adopts a random object as a religious talisman and now seeks First Amendment protection for it. Rather, Plaintiffs have taken an object central to orthodox Catholicism and extended its presence into their public, daily lives. The fact that wearing a rosary as a necklace is not mandated by orthodox Catholicism does not defeat their First Amendment rights to free exercise of their personal beliefs. *See Alabama & Coushatta,* 817 F.Supp. at 1330. In this Court's view, to provide First Amendment protection to Plaintiffs when they have the rosary in their hands, but deny such protection when they wear it around their necks, would constitute an overly narrow reading of the free exercise clause. Therefore, Plaintiffs have a sincere religious belief subject to First Amendment protections.

█ In *Employment Div., Dept. of Human Resources of Ore. v. Smith,* the Supreme Court rejected a free exercise chal-

lenge by a Native American to a law criminalizing peyote use, holding that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" 494 U.S. 872, 878, 110 S.Ct. 1595, 1599–1600, 108 L.Ed.2d 876 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982)). In arriving at its ruling, the Court applied a rational basis test and stated that a law of general applicability need not be justified by a compelling governmental interest, even if the law incidentally burdens a particular religious practice. *Id.* However, the Court also stated that, where a free exercise claim is combined with "other guarantees, such as freedom of speech," a more rigorous standard of review applies. *Id.* In such "hybrid" religion-plus-speech cases, the government must demonstrate more than merely a reasonable relation to a substantial state interest to sustain the infringement on First Amendment expression. *See Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972); *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1216 (5th Cir.1991); *Alabama & Coushatta Tribes v. Big Sandy Sch. Dist.*, 817 F.Supp. at 1332.

■ Plaintiffs' causes of action combine free exercise of religion and free speech claims; accordingly, the heightened level of scrutiny used in hybrid cases applies. Therefore, pursuant to the holding in *Yoder*, this Court must perform a balancing test to determine whether the school's regulation places an "undue burden" on Plaintiffs' religious exercise and whether the regulation bears more than a "reasonable relation" to NCISD's stated objective. *See Yoder*, 406 U.S. at 220–21, 92 S.Ct. at 1535–36; *Alabama & Coushatta*, 817 F.Supp. at 1333.

■ After considering the burden placed on Plaintiffs' religious exercise and NCISD's stated objective of regulating gang activity on campus, the Court finds that the prohibition on wearing rosaries violates Plaintiffs' First Amendment rights. This Court does not doubt that a dress code can be one means of restricting gang activity on campus. However, while this Court will not endeavor to make a comprehensive list, surely there are a number of more effective means available to NCISD, other than a blanket ban on wearing rosaries, to control gang activity and ensure the safety of its schools. This is particularly true where, as here, the evidence showed only three instances of alleged gang members wearing rosaries as gang identifiers, with only one of those incidents occurring on campus. Therefore, the Court finds that NCISD's restriction on rosaries does not "bear more than a reasonable relation" to regulating gang activity in the District. *Yoder*, 406 U.S. at 233, 92 S.Ct. at 1542. Moreover, the regulation places an undue burden on Plaintiffs, who seek to display the rosary not to identify themselves with a gang, but as a sincere expression of their religious beliefs.

## V. RELIEF

Plaintiffs seek injunctive relief and damages. As the Court has found that NCISD's prohibition on gang-related apparel, and its ban on rosaries in particular, violates Plaintiffs' rights to free speech and free exercise of religion, NCISD is enjoined from enforcing its prohibition on rosaries against Plaintiffs. The Court also finds that the NCISD regulation on gang-related apparel, as written, is void for vagueness. To the extent NCISD seeks to regulate gang-related apparel, NCISD must define with adequate specificity the apparel it seeks to prohibit.

■ Although Plaintiffs requested monetary damages under 42 U.S.C. § 1983 for the infringement of their First Amendment rights, Plaintiffs failed to cite a specific damage amount in their request. Additionally, no evidence was presented at trial by Plaintiffs to support an award of monetary damages. Accordingly, the Court finds that Plaintiffs are not entitled to monetary damages.

As the prevailing parties in a First Amendment case brought pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to recover their attorneys' fees and costs. *See Iranian Students Ass'n v. Sawyer*, 639 F.2d 1160 (5th Cir.1981). The parties agreed at trial that

the issues of attorneys' fees and costs would be addressed via post-trial briefing and submission of affidavits. Therefore, Plaintiffs shall submit briefs and affidavits supporting their request for fees and costs.

Any finding of fact that should be construed as a conclusion of law is hereby adopted as such.