Ismael "Buddy" VILLEJO and Service Employees International Union, Local No. 5, Plaintiffs,

v.

CITY OF SAN ANTONIO and Hon. Phil Hardberger in his official capacity only, Defendants.

No. SA–07–CA–342–OG.

United States District Court, W.D. Texas, San Antonio Division.

April 20, 2007.

Elaine Fawcett Edwards, Philip Durst, Deats Durst Owen & Levy PLLC, Austin, TX, for Plaintiffs.

Cathy J. Sheehan, City of San Antonio, Jack Pasqual, Sr., Office of the City Attorney, Kenneth L. Clark, Sr., Assistant City Attorney, City Attorney's Office, San Antonio, TX, for Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

GARCIA, District Judge.

Before the Court are plaintiffs' request for a temporary restraining order and preliminary injunction. The issue to be decided in this case is whether a city may prohibit its employees from participating in city-sponsored "measure" or "issue" elections (for instance, a bond election, referendum, or charter-amendment election), as opposed to elections to choose city officeholders. A hearing was held on April 18, 2007 at which the City of San Antonio presented a witness and the parties argued. The Court has also reviewed the parties' briefs and exhibits.

Plaintiffs are a civilian employee of the City of San Antonio and the union that represents over 800 other City employees. Plaintiffs bring this constitutional challenge to City Administrative Directive 1.2 ("AD1.2" or "the Directive"), adopted by the City Manager and governing the political activities of city civilian (*i.e.*, non-uniformed) employees. The Directive states that city civilian employees shall not "take any part in the management or affairs or political campaign of any candidate for *city* office *or in any city-sponsored election, including charter amendments, bond issues, referendum, or other ballot measures.*" Administrative Directive 1.2 at IV. A.1 (underlining in original; italics added).[1] This case involves the italicized por-

---

1. Paragraph IV.A.1. of the Directive reads as follows:

 No city employee shall take any part in the management or affairs or political campaign of any candidate for *city* office or in any city-sponsored election, including charter amendments, bond issues, referendum, or other ballot measures.

 These restrictions do *not* apply to elections for county, state, national or other non-city offices. A city employee may contribute personal funds or time to non-city campaigns or engage in other political activity related to non-municipal elections so long as that employee does not engage in such activities during city duty time or using any *city resource.*

 Taking part in the management or affairs of a political campaign includes:
 - serving as a campaign manager or in an administrative or decision-making role in an election or campaign activity;
 - directly or indirectly give, receive or solicit any contribution for any City Council

tion of the Directive. Although the Directive prohibits activities in candidate elections as well as non-candidate elections (referred to in this opinion as "measure elections"), it should be made clear at the outset that plaintiffs do not challenge the prohibitions regarding employee participation in candidate elections. Nor do the plaintiffs challenge any restriction on engaging in political activity on city time or on city property. They seek only to actively participate in measure elections, and specifically, in the upcoming city bond election.

On May 12, 2007 the City of San Antonio will conduct an election to consider a $550 million bond program addressing infrastructure projects including roads, bridges, drainage, parks, library, and public health facility improvements. The City's literature describes the program as "the largest municipal bond program in San Antonio history." Early voting for the election will begin April 30, 2007. Plaintiff Villejo, a city employee registered to vote in city elections, would participate in the bond election through such activities as block walking, distributing campaign literature, and endorsing or opposing particular bond measures were it not for the restrictions placed upon his ability to do so by the Directive and the threat of discipline for disobeying the Directive. Villejo affidavit at ¶ 4. Plaintiffs seek a preliminary injunc-

tion enjoining defendants from enforcing AD1.2 so that they may participate in the upcoming bond election.

Plaintiffs challenge the Directive on two grounds. First, they argue that it unconstitutionally restricts fundamental First Amendment rights of city employees by outlawing participation in measure- or issue-type elections. Second, plaintiffs contend that the Directive is in conflict with the provisions of the San Antonio City Charter and goes beyond the City's ability to regulate political activity. Because the Court finds that the Directive cannot pass First Amendment scrutiny, it will not reach the Charter argument.

## First Amendment.

 Advocacy concerning non-candidate measure elections, such as the bond election at issue here, involves "core political speech." *See Buckley v. Valeo,* 424 U.S. 1, 48, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (restrictions on "vigorous advocacy" of the election or defeat of candidates for federal office burdens "core" First Amendment expression); *Monitor Patriot v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971) (First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office"). The public also has a vital stake in a full and robust debate regarding local elections and the public issues that directly and powerfully affect their communities.

candidate or city election, including organizing, selling tickets to, or promoting a fund-raising event;
- block walking;
- distributing campaign literature;
- poll watching on behalf of a candidate;
- circulating petitions to support or oppose placement of a candidate or measure on the ballot;
- leading, organizing or conducting political rallies or parades promoting or opposing a candidate or a ballot measure;
- giving public speeches on behalf of or against a candidate or ballot measure;
- writing letters or articles for publication;

- endorsing or opposing a candidate or ballot measure in a political advertisement, a broadcast, campaign literature or similar material;
- driving voters to the polls on behalf of a candidate;
- other active forms of vote solicitation for or against a candidate or ballot measure.
Employees in the course of their duties for the city may provide factual information to members of the public regarding city elections.
Administrative Directive 1.2, ¶ IV.A.1. (emphasis in original).

Moreover, the public has a strong interest in hearing the comments and informed opinions of government employees on these vital issues. *See Waters v. Churchill,* 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions); *Pickering v. Board of Educ.,* 391 U.S. 563, 571–72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (teachers, as a class, are community members most likely to have informed and definite opinions on how funds allotted to the school system should be spent; it is essential that they be able to speak freely on such questions without fear of retaliation).

 Because the plaintiffs' interest in participating in city-sponsored measure elections strikes close to the heart of the First Amendment, state regulation of election advocacy accordingly requires "exacting scrutiny" to ensure that the regulation is "narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346–47, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *see also, First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 776–777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (speech on income tax referendum "is at the heart of the First Amendment's protection"). Under the strict scrutiny analysis, the City has the burden to show that the restriction on employee political activities is (1) narrowly tailored to serve (2) a compelling state interest. *Republican Party of Minn. v. White,* 536 U.S. 765, 774, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002).

Case law recognizes a distinction between candidate and measure elections. *Citizens Against Rent Control v. Berkeley,* 454 U.S. 290, 299–300, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981); *Wachsman v. City of Dallas,* 704 F.2d 160, 169 (5th Cir.1983); *Let's Help Florida v. McCrary,* 621 F.2d 195, 199–200 (5th Cir.1980); *see also Bellotti,* 435 U.S. at 790, 98 S.Ct. 1407 ("Referenda are held on issues, not candidates for public office."). When dealing with elections involving *candidates,* the courts recognize that the government has an interest to prohibit conditions in which employment and advancement are made to depend on political performance, rather than on merit. *Wachsman,* 704 F.2d at 166–67. In the "Hatch Act" cases, that deal with the federal statute that prohibits federal employees from participating in candidate elections and a similar state statute applying to state employees, the Supreme Court approved certain restrictions on the political activities of federal and state employees in a partisan setting. *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The Court in *Letter Carriers* explained the purpose behind the Hatch Act:

> It seems fundamental in the first place that employees in the Executive Branch of the Government, or those working for any of its agencies, should administer the law in accordance with the will of Congress, rather than in accordance with their own or the will of a political party. They are expected to enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof. A major thesis of the Hatch Act is that to serve this great end of Government—the impartial execution of the laws—it is essential that federal employees, for example, not take formal positions in political parties, not undertake to play substantial roles in partisan political campaigns, and not run for office on partisan political tickets. Forbidding activities like these will reduce the hazards to fair and effective government.

*National Ass'n of Letter Carriers,* 413 U.S. at 564–65, 93 S.Ct. 2880. Or, as succinctly summarized by an expert witness in the *Wachsman* case, "[w]hat the Hatch Act tries to do is keep the employee from being involved in the politics that elects his boss." *Wachsman,* 704 F.2d at 165. Similar statutes enacted by the states serve similar important societal interests:

> such restrictions serve valid and important state interests, particularly with respect to attracting greater numbers of qualified people by insuring their job security, free from the vicissitudes of the elective process, and by protecting them from 'political extortion.'

*Broadrick,* 413 U.S. at 606, 93 S.Ct. 2908.

In contrast, the government's interests in regulating the free speech and associational rights of employees to participate in elections not dealing with their potential supervisors, but rather with their right to participate in elections governing issues such as public bonds, are not as compelling. "Whatever may be the state interest or degree of that interest in regulating and limiting contributions to or expenditures of a candidate or a candidate's committees there is *no significant state or public interest* in curtailing debate and discussion of a ballot measure." *Citizens Against Rent Control v. Berkeley,* 454 U.S. 290, 298–99, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) (emphasis added); *see also Wachsman,* 704 F.2d at 169 ("For purposes of judging the validity of restrictions on election-related activity in the light of first amendment considerations, we believe it more meaningful to distinguish between elections on the basis of whether they are candidate elections or non-candidate elections, such as referenda and constitutional amendment elections."). As *Buckley v. American Constitutional Law Found., Inc.,* 525 U.S. 182, 203, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), and *Bellotti,* 435 U.S. at 790, 98 S.Ct. 1407, recognized, corruption and the appearance of corruption are not really at stake in a measure election, where the electorate can assess the particular issue on the merits and need not worry about a candidate's being beholden to a contributor on some future vote.

The City argues that the Directive is valid because the evils it seeks to avert are the same whether the election is one for a candidate or a ballot measure. This is because, according to the City, the same tension can result between an employee advocating a position on a measure election and the employee's supervisor who has taken the opposite position. The case law does not agree with this argument, as indicated above. Neither does this Court.

■ The City argues that in enacting the Directive, it "sought to maintain confidence in its system of representative government by preventing the practice of political justice—the spoils system—as well as the appearance of it." City's Response (doc. 7) at eighth page. It is unclear, however, how participation in a measure election, such as a bond election, would promote the spoils system. City employees are less likely to suffer retribution from taking the opposite position from their supervisor on, say, library improvements, than from campaigning for their supervisor's opponent in an election. Moreover, city employees are not likely to build powerful "political machines" or to exert undue influence or control over elected officials based on their advocacy for or against street repairs. While tensions will doubtless exist over opposing positions in a bond election, tensions between co-workers, or between supervisors and subordinates, will never be eliminated. Such tensions are as likely to exist over presidential and state elections, which the City does not seek to prevent its employees from participating in.

Nor is public confidence in the operation of city government likely to be impaired by the participation of city employees in measure elections. As indicated above, the Supreme Court thinks government employee participation is both welcomed by the public and vital to the debate. *See Waters*, 511 U.S. at 674, 114 S.Ct. 1878; *Pickering*, 391 U.S. at 571–72, 88 S.Ct. 1731.

██ Perhaps the City's primary motivation for the Directive is set out at the eighth page of its (unpaginated) response. (Docket no. 7.) The City notes that "Plaintiffs have specifically stated their intent to interfere with the ability of their employer, the City of San Antonio, to secure revenue via the bond election." The desire to secure a city's funding is, of course, not a compelling interest that would justify the suppression of its employees' First Amendment speech and associational rights.

██ Even assuming the City has identified compelling interests in preventing its employees from participating in measure elections, the Directive is not narrowly tailored to achieve those interests.

By its terms, the Directive prohibits any city employee from "tak[ing] any part ... in any city-sponsored election...." The only express limitations on this sweeping prohibition are contained in paragraph IV. B., which permits the employee to: vote; "express personal political opinions on issues or candidates at a private or non-political public gathering ..."; sign petitions; display stickers, yard signs or buttons except on city time or property; and act as an election or polling judge "with the county or federal election authorities." The Directive suffers from both vagueness and overbreadth.

It is not clear, for instance, what constitutes "non-political public gatherings" although two examples are given—neighborhood association and service club meetings. Is a meeting of a neighborhood association that addresses street repair and drainage issues in the neighborhood a "non-political public gathering" where a city employee may express his or her "personal political opinion" on the upcoming bond election? The Directive is unclear.

More examples of overbreadth and vagueness abound. In the bulleted list of prohibited activities of paragraph IV.A.1., an employee is prohibited from "driving voters to the polls on behalf of a candidate". It is unspecified whether the employee may drive voters to the polls on behalf of a ballot measure. The same is true of the prohibition concerning "poll watching on behalf of a candidate." Does this provision also restrict the employee from poll watching as a proponent or opponent of a ballot measure? Other prohibitions clearly apply to both candidate and measure elections or do not specify either, so it is apparent that the City knows how to draft prohibitions that also include measure elections.

The last bulleted prohibition is also troublesome. It prohibits city employees from "other active forms of vote solicitation for or against a candidate or ballot measure." This catch-all provision is so broad as to cover any political activity at all. Such a sweeping measure would surely chill even permissible political activity.

The discussion at the hearing was rife with hypothetical examples that highlighted the Directive's vagueness. For example, the City Attorney[2] argued that the City Manager could appear at a "huge

---

2. The City Atty's office is granted the authority to interpret the Directive and issue advisory opinions to employees concerning whether particular actions would violate the Directive's prohibitions. AD1.2 at ¶¶ V.C.1. & VI.B.

public rally" or before the local newspaper's editorial board and present facts on, for example, the city's libraries.[3] The City Attorney further asserted that the City Manager could also tell the board that "there is a need" for more libraries, although she could not ask them to endorse the specific proposal.[4] Could another city employee appear before that same rally or editorial board and argue that the city "does not need" more money for libraries because it instead needs to use the money it already has more efficiently? Is this permitted "factual information" or a prohibited "public speech[ ] . . . against a . . . ballot measure"? The Directive is unclear.

There are less restrictive means to address the City's concerns, some of which have already been taken. For instance, San Antonio City Code § 2–50 already addresses political activity. It prohibits city officials and employees from coercing subordinates to participate in or contribute to candidates or political campaigns relating to any party, candidate, or issue, or to refrain from engaging in any lawful political activity. It also prohibits city officials and employees from "accept[ing] any thing of value, directly or indirectly, for political activity relating to an item pending on the ballot. . . ." This provision prohibits many of the harmful activities relating to political influence, coercion, and basing one's job or advancement on political effort rather than meritorious performance. Likewise, article VI § 78 of the City Charter proscribes certain political activity on the part of city employees including circulating petitions, soliciting or making political contributions, managing the campaign of any candidate for city office, and wearing buttons or distributing candidate campaign literature on city property.[5] In addition, the Directive itself prohibits coercion, threatening dismissal or other discipline based on political actions, opinions, or affiliations.[6] It also prohibits employees from

---

3. Proposition 4 of the May 12 bond election includes $11,000,000 worth of bonds dedicated to funding city libraries.

4. The proposition that the City Manager could assert that the city needed more libraries as long as she did not request a specific endorsement seeks to draw a fine distinction between approved and prohibited conduct that is nowhere apparent in the Directive. This highlights again the Directive's vagueness.

5. The relevant Charter provisions provide:

(c) No city employee shall continue in such position after becoming a candidate for nomination or election to any City or Bexar County elected office.
(d) No city employee may circulate petitions for city council candidates or city elections, receive or solicit any contribution for any city council candidate or city election.
(e) No city employee shall make ally contribution to the campaign funds of any candidate for City office or take any part in the management or affairs or political campaign of any candidate for City office, further than in the exercise of his rights as a

citizen to express his opinion and to cast his vote.
(f) No employee of the city may wear city council campaign buttons nor distribute literature at work or in a city uniform or in the offices or building of the City of San Antonio.
(g) City employee organizations shall not be allowed to make any contribution to the campaign funds of ally candidate for City office or the take part in the management or affairs of a political campaign for City office, further than to express opinions, except as authorized by state law.

San Antonio City Charter, art. VI § 78.

6. 7. No employee of the city shall use official authority or influence to coerce the political action of any person or body,

8. No person shall dismiss or cause to be dismissed, or threaten to dismiss, or make my attempt to procure the dismissal of, or in my mariner change the official rank or compensation of any person in such service, because of political opinions or affiliations.

Administrative Directive 1.2, ¶¶ IV.A.7. & 8.

persuading other employees to participate in or refrain from participating in political activity.[7] These provisions show the City is capable of addressing these vices without unduly restricting its employees' First Amendment rights.

Similar provisions could be drafted specifically to avoid other known evils rather than seeking to limit all employee participation in all city-sponsored measure elections. Restrictions imposed by a governmental entity must not be broader than are required to preserve the efficiency and integrity of its public service. The ready availability of significantly less restrictive alternatives amply demonstrates that the Directive is not sufficiently narrowly tailored to withstand exacting scrutiny.

### Preliminary injunction.

■■ A preliminary injunction is considered "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal quotations omitted) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)). To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury to the plaintiff outweighs any harm the injunction might cause the defendant; and (4) that the injunction will not impair the public interest. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir.1999); *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir.1990).

■ The Court finds that plaintiffs have met all requirements for the issuance of a Preliminary Injunction including, but not limited to, that plaintiffs will likely prevail on the merits. The defendants' regulations and prohibitions regarding the political and free speech rights of City employees to participate, as enumerated above, in City elections pertaining to bond measures (as opposed to elections for candidates for city offices) are violative of the fundamental political and speech rights of plaintiffs and City employees and not likely to pass the scrutiny required for regulations of such fundamental political and speech rights to be permissible. The Court further finds that irreparable harm will be suffered by the plaintiffs if this injunction is not issued, with the May 12, 2007, municipal bond measure election so close, especially with early voting for that election set to begin on April 30, 2007. The Court finds that no significant harm will come to defendants in the issuance of this Preliminary Injunction and that, when balanced, the equities clearly require that this Preliminary Injunction be issued.

The Court has the authority to enter this Preliminary Injunction, pursuant to FED. R. CIV. P. 65, and to restrain action violative of, *inter alia*, the First Amendment to the United States Constitution, Texas law, and/or 42 U.S.C. § 1983. The Court further finds that plaintiffs have a probable right of recovery on the merits of their claims against defendants in their claim, *inter alia*, that the defendants' policy (Administrative Directive 1.2) is violative of the free speech and associational rights of plaintiffs and city employees and that all conditions precedent to the granting of this Preliminary Injunction have been satisfied.

It is therefore ORDERED that defendants are immediately restrained from taking any action to enforce their prohibi-

7. 9. No employee may persuade or attempt to persuade any city employee to participate or to refrain from participating in any political activity relating to a particular candidate or issue.
Administrative Directive 1.2, ¶ IV.A.9.

tions against the rights of plaintiffs and city employees to participate, if they so choose, in the May 12, 2007, municipal bond measure election, in the manner set out below.

It is therefore ORDERED that the defendants, The City of San Antonio and its Mayor, the Honorable Phil Hardberger, in his official capacity, their agents, employees, city manager, attorneys, and all others in active concert or participation with them and who receive actual notice of this Preliminary Injunction, are enjoined from enforcing defendants' prohibitions (including those contained in City Administrative Directive 1.2) against any city employee who chooses to participate in the May 12, 2007 municipal bond election, including any employee who chooses to participate in any of the following activities with regard to the municipal bond measures on the ballot in the May 12, 2007 city bond election:

- block walking;
- electioneering;
- distributing, or participating in the creation of, campaign literature;
- leading, organizing, conducting political rallies or parades promoting or opposing the municipal bonds;
- writing articles for publication endorsing or opposing a bond measure on the May 12, 2007, ballot;
- directly or indirectly giving, receiving or soliciting contributions, including organizing, selling tickets to, or promoting a fund-raising event regarding any municipal bond measure;
- driving, phoning, e-mailing, or otherwise encouraging voters to the polls, or any other conduct intended to "Get Out The Vote," and/or to increase awareness of, or participation in, the May 12, 2007 municipal bond election; and/or

- any other forms of vote solicitation for or against any or all of the municipal bond measures.

It is further ORDERED that this Preliminary Injunction prohibits defendants from taking any adverse or disciplinary action against any City employee who participates in the May 12, 2007, municipal bond election as set out herein. This Preliminary Injunction also restrains any actions by defendants restricting the above-enumerated activities of City employees, under any other City policy or provision, including but not limited to any provision of the San Antonio City Charter, and is thus not limited only to actions under Administrative Directive 1.2.

This Preliminary Injunction is narrowly tailored to protect the fundamental constitutional rights of plaintiffs and employees of the City of San Antonio. As such, nothing in this Preliminary Injunction shall, or is intended to, affect any of defendants' regulations of, or prohibitions on, the activities of city employees regarding the election of any candidate for City Council in the upcoming May 12, 2007 election. Defendants may enforce, and/or take appropriate disciplinary action, against any employee who violates Administrative Directive 1.2 or any other City prohibition, including but not limited to restrictions contained in the San Antonio City Charter, that prohibit employees from taking enumerated actions with regard to the election of candidates to City office. Nor does this Preliminary Injunction prohibit the City from enforcing any and all provisions of its Charter, Code, or Administrative Directive 1.2 designed to prohibit political activity of employees on city property or on city time.

It is further ORDERED that this Order shall be effective when signed and shall remain in effect until the signing of a final judgment in this case or until further or-

der of this Court. It is further OR-DERED that plaintiffs file their bond, in the sum of $1,000.00, conditioned for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Plaintiffs' request for a temporary restraining order is DENIED as moot.