John T. NETHERLAND

v.

CITY OF ZACHARY, LOUISIANA,
et al.

Civil Action No. 07–409–JJB.

United States District Court,
M.D. Louisiana.

Nov. 30, 2007.

J. Michael Johnson, Alliance Defense Fund, Shreveport, LA, Benjamin W. Bull, Alliance Defense Fund, Scottsdale, AZ, Joel Oster, Kevin Theriot, Alliance Defense Fund, Leawood, KS, for John T. Netherland.

James L. Hilburn, Parish Attorney's Office, Baton Rouge, LA, for City of Zachary, Louisiana, et al.

### RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

JAMES J. BRADY, District Judge.

This matter is before the court on a Motion for Preliminary Injunction (doc. 10) filed by plaintiff, John Todd Netherland. Defendants, City of Zachary, Louisiana and Zachary Police Department Lieutenant Troy Eubanks have filed an opposition. (Doc. 23). A hearing on the motion took place before this court on September 17, 2007. Following the hearing, Plaintiff filed a supplemental memorandum in support of his motion (doc. 29) and Defendants filed an opposition (doc. 33). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff, John T. Netherland seeks injunctive relief against the City of Zachary, Louisiana and City of Zachary Police Department Lieutenant Troy Eubanks, from prohibiting Mr. Netherland from expressing a religious message on a public area in the City of Zachary. Plaintiff further prays that this Court declare the City of Zachary's disturbing the peace ordinance, Zachary Code Ordinance § 58–93.2, unconstitutional.

### Background

John Todd Netherland owns a tree trimming service and resides in Baker, Louisiana. He is a professing Christian, who found his faith while battling alcoholism and drug addiction. He desires to share his religious views with others, as part of his sincerely held religious beliefs. Mr. Netherland shares his faith with others by speaking in public areas, just as he did near Sidelines Grill ("Sidelines") in the City of Zachary on the evening of November 18, 2006. That night, Mr. Netherland preached near Sidelines; directing his message to the customers who chose to consume alcoholic beverages.

Sidelines is a restaurant located on the northeast corner of Plank Road (La. Hwy.67) and La. Hwy. 64, at the intersection known as "Zachary Crossroads." The

restaurant offers a varied menu to its patrons, holds a restaurant-class alcoholic beverage license, and offers a choice of alcoholic beverages to its customers. It has a bar and line of about 25 bar stools, and is open until 2:00 a.m.

At approximately 9:00 p.m. Mr. Netherland positioned himself on a public easement—a grassy ditch area separating a local street from Sidelines—about 75–100 feet from the entrance to the establishment, and began to spread his message. Mr. Netherland chose that spot to speak so "the many alcoholics that patronize Sidelines" would hear him.[1]

Mr. Netherland does not follow a script when he preaches. Rather, he quotes from scripture, preaches his "basic salvation message" and says,

"Know ye not that the unrighteous shall not inherit the kingdom of God? Neither fornicators, idolaters, adulterers, effeminate, abusers of themselves with mankind, revelers, none of these shall inherit the Kingdom of God." [2]

He also repeats, "Jesus said, 'a man must be born again.' It's repentance towards God and faith in Christ that will set you free. If sin's the problem, Jesus is the answer." [3] Though he did not use a megaphone or other amplification, he has a loud voice, and since he stood near a street with moving cars, he needed to use it.

At approximately 9:45 p.m., the Zachary Police Department received a telephone call from Sidelines employee, Ty Stevens. Stevens called to complain about Mr. Netherland because he believed Mr. Netherland's message upset some patrons. Stevens said that Mr. Netherland was standing on Sidelines property in the parking lot area as he loudly yelled at Sidelines' customers as they approached and/or left the building.

Zachary police officers Ryan Ivey and David Hughes responded to the call and spoke to Mr. Stevens. Officer Ivey testified that they never observed Mr. Netherland do anything illegal.[4] The officers spoke with Mr. Netherland and, after, consulting their supervisor, decided not to arrest him, concluding that he could continue with his speech.

Not more than an hour after Officers Ivey and Hughes left, did Mr. Stevens complain again to the Zachary police about Mr. Netherland. This time, Lt. Troy Eubanks responded to the complaint. Like Officers Ivey and Hughes, Lt. Eubanks observed Mr. Netherland speak only a religious message. However, Lt. Eubanks told him that he may not speak on the interior side of the public easement (the grassy ditch).[5] He told him instead to move to the far edge of the easement, close to the street, and speak from the unpaved shoulder of the roadway. Mr. Netherland obeyed Lt. Eubanks' directions, but moments later, Eubanks told Mr. Netherland that he would arrest him anyway for disturbing the peace if Mr. Netherland continued to express his religious message anywhere in the public

---

1. Doc. 29, p. 6.

2. 1 Corinthians 6:9.

3. Transcript at 13:8.

4. Transcript at 77:7. While the responding officers did not observe Mr. Netherland on Sidelines property, Sidelines' employees and management believed that Mr. Netherland

preached while standing on the Sidelines parking lot. Though Mr. Netherland maintains he never stood on Sidelines property, this Court finds it plausible that Mr. Netherland may have strayed briefly onto the edge of the Sidelines parking lot.

5. See transcript at 112.

easement.[6]

To avoid arrest, Mr. Netherland yielded to Lt. Eubanks' demand. He ceased speaking and left the area because of Lt. Eubanks' threat of arrest and prosecution for the alleged violation of Zachary Code Ordinance § 58–93.2 ("Ordinance"). Mr. Netherland testified that since that evening, he has not returned to speak on the public easement near Sidelines out of "fear of being arrested."[7] Additionally, he desires to speak at other areas of traditional public fora in Zachary, but does not do so because the authority of the Ordinance encompasses the entire City of Zachary.

### Discussion and Law

## I. Preliminary Injunction Standard

A preliminary injunction is a powerful remedy used sparingly in cases with a set of extraordinary circumstances. A court will only grant such injunctions when the movant has fully carried his cumulative burden of persuasion on each of the four following factors. *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974).

To obtain a preliminary injunction, the Fifth Circuit requires a plaintiff to show that the following four factors are met: (1) a substantial likelihood that the plaintiff will prevail on the merits of his case; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm to the defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *Id.* at

572; *Maxey v. Smith*, 823 F.Supp. 1321, 1327–28 (N.D.Miss.1993).

## II. Actual Success on the Merits

Zachary Code Ordinance 58–93.2, Disturbing the peace, reads, in pertinent part, as follows:

 (a) Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:

 (2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty.

Plaintiff argues that he is likely to succeed on the merits because Defendants are depriving him of his constitutional rights to free speech, due process of law, and free exercise of religion. First, Plaintiff argues that because Defendants utilized the content-based Ordinance, Mr. Netherland was silenced because his speech was allegedly too annoying or offensive to some people. Next, Plaintiff argues that the Ordinance violates due process of law, since it uses inherently vague terms such as "annoying" and "offensive," and that as a result, the Ordinance provides the government with unfettered discretion in arbitrarily restricting speech and chills the speech of citizens. Finally, because Mr. Netherland preached a religious message, Plaintiff ar-

---

**6.** When Lt. Eubanks first told Mr. Netherland to stand closer to the road, he did not realize it would create more of a problem. At the hearing, Lt. Eubanks testified that this initial order was a mistake, "because when he went to the shoulder of the roadway there, he started yelling at the cars passing by on the road-

way ..." Transcript at 104, 105. Lt. Eubanks subsequently had safety concerns about Mr. Netherland preaching so close to the travel portion of the roadway. Transcript at 107.

**7.** Transcript at 15:6.

gues that Defendants have violated his right to the free exercise of religion.

## A. Freedom of Speech

■ In ascertaining the constitutional validity of a restriction on speech, the Court must (1) first assess whether the speech deserves protection, (2) then determine the type of forum involved, and (3) finally decide whether the proffered justification for the state's restriction satisfies the appropriate standard. *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

### 1. Protected Speech

■ There is no question that Mr. Netherland's speech in Zachary, near Sidelines, expressed a religious message. Religious speech is fully protected by the First Amendment. *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). The Supreme Court in *Pinette* stated that, "government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince." *Id.*

### 2. Type of Forum

■ Sidelines' employees and management maintain that Mr. Netherland stood on Sidelines' property in the parking lot area while he yelled loudly at Sidelines' customers as they approached and/or left the building. Mr. Netherland maintains that he stood on a public easement—property belonging to the City of Zachary, but used as a separator and easement between the private parking lot of Sidelines and the side of a nearby road. Police officers who arrived at Sidelines to observe Mr. Netherland never saw him on Sidelines' property, and this Court finds that while Mr. Netherland may have briefly strayed onto the Sidelines parking lot, he expressed his religious message from a public easement.

■ A public easement, including the one on which Mr. Netherland expressed his religious message, is a quintessential traditional public forum. It is fundamental to the guarantees of the First Amendment that "public streets and sidewalks have been used for public assembly and debate" and are "the hallmarks of a traditional public forum." *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *see also Houston Chronicle Publishing Co. v. League City,* 488 F.3d 613, 2007 WL 1544645, at *2, *8 (5th Cir.2007) (recognizing that similar unpaved areas are examples of the "quintessential public forum"); *First Unitarian Church v. Salt Lake City Corp.,* 308 F.3d 1114, 1128 (10th Cir.2002)(finding the fact that easement served same purpose as public sidewalk "a persuasive indication that the easement is a traditional public forum").

### 3. Level of Review

■ It is well settled that the government has a limited ability to permissibly restrict expressive activity in a public forum. *U.S. v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). The Supreme Court has set forth two separate tests to determine whether a governmental restriction on speech violates the First Amendment: strict scrutiny and intermediate scrutiny. In order to decide which test to apply to the government's conduct, the court must consider whether the restriction was content-based, or content-neutral. If the court determines that the Defendants' restriction was based on the content of Mr. Netherland's speech, strict scrutiny applies. If, however, the court determines that the Defendants' restriction was not based on the content of Mr.

Netherland's speech, but was content-neutral, the intermediate scrutiny test applies.

 Strict scrutiny, as applied to the content-based restrictions of speech, requires the government to show that the restriction at issue is narrowly tailored to promote a compelling governmental interest. *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). If there is a less restrictive alternative available, the governmental restriction cannot survive strict scrutiny. *Id.* Alternatively, intermediate scrutiny requires the government to demonstrate that the restriction on speech is narrowly tailored to serve a significant government interest and leaves open alternative channels of communication. *Horton v. City of Houston,* 179 F.3d 188, 194 (5th Cir.1999). So long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored to satisfy intermediate scrutiny. *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

 Defendants' restriction on Mr. Netherland's speech in the traditional public forum was and remains content-based, thus it is subject to strict scrutiny. According to testimony, the Defendants' witnesses admitted that they complained about Mr. Netherland and enforced Zachary Code Ordinance 58–93.2 against him because of the content of his speech. Indeed, Lt. Eubanks admitted as much, under oath, in the following exchange:

Q: And if he were to go out there tonight and engage in the same type of conduct, you would feel that you would arrest him?

A: (Eubanks) If the contents of his conversations are the same and I have proof they are the same, yes, sir, I would arrest him.[8]

Defendants argue that Mr. Netherland could have been arrested for Criminal Trespass pursuant to La.Rev.Stat. Ann. § 14:63.[9] While these statutes provide a content-neutral justification for Mr. Netherland's removal from Sidelines, if he in fact was standing on Sidelines property, the hearing record is replete with testimony indicating that Mr. Netherland was targeted because of the content of his message.[10] In their original Memorandum in

---

8. Transcript at 117:15–20.

9. LSA–R.S. 14:63, Criminal Trespass, provides in relevant part:

 B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.

 C. No person shall remain in or upon property, movable or immovable, owned by another without express, legal, or implied authorization.

 LSA–R.S. 14:63.3, Entry or remaining in places or on land after being forbidden, states, in pertinent part:

 A. No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other moveable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person. For the purposes of this Section, the above mentioned sign means a sign or signs posted on or in the structure, watercraft, or any other moveable, or immovable property, including public buildings and structures, ferries and bridges, or part, portion or area thereof, at a place or places where such sign or signs may be reasonably expected to be seen.

10. *Officer Ivey (and Officer Hughes by adoption):*

 Transcript at 82:23–83:1:
 · Question (by Mr. Oster): "Now, it's true, isn't it that what Mr. Netherland was say-

Opposition (doc. 23), Defendants characterize Mr. Netherland's speech as "fighting words," indicating that the content of his speech was the major issue. (Doc. 23, p. 2). Defendants also argue that Mr. Netherland was threatened with arrest "due to his ... conduct and not solely due to the conduct of his message." (Doc. 23, p. 5). Even if the Defendants were not solely motivated by the content of Mr. Netherland's speech, it was a major influence in their decision to threaten him with arrest, and it still does not negate the fact that the Disturbing the Peace Ordinance is content-based.

■ The Supreme Court holds that "listeners' reaction to speech is not a content neutral basis for regulation." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Such "provisions cannot be viewed as being content-neutral restrictions [when they] proscribe noises that are, *inter alia*, 'annoying' or 'unnecessary.' These provisions invite law enforcement and others to make a determination as to whether the ordinance has been violated on purely subjective, content-based criteria." *Dupres v. Newport*, 978 F.Supp. 429, 435 (D.R.I. 1997).

> ing, the content of his message, played a part in the allegation that he disturbed the peace and that he was annoying?"
> · Answer: *"Yes."*
> Transcript at 78:9–21:
> · Question (by Mr. Oster): "How [would you] distinguish between somebody who has the intent to annoy versus someone who has an intent to ... preach the Word of God[?]"
> · Answer: *"It would be the words he was using."*
> Transcript at 71:13–16:
> · Question (by Mr. Hilburn): "What was the nature of the call?"
> · Answer: *"It was disturbing the peace .... Mr. Netherland ... was preaching and he was annoying the customers."*
> Transcript at 75:22–25:
> · Question (by Mr. Oster): "You said you got a disturbing the peace call. What does that mean?"
> · Answer: *"The call was he was annoying the customers."*
> *Ty Stevens:*
> Transcript at 59:8–12:
> · Question (by the Court): "So if he had been singing songs, you know, out there that people liked, there wouldn't have been any problem ...; is that correct?"
> · Answer: *"Yes."*
> Transcript at 54:6–8:
> · Question (by Mr. Oster): "Do you think that Mr. Netherland's message was upsetting to some patrons?"
> · Answer: *"Yes, sir."*
> Transcript at 57:11–15:
> · Question (by Mr. Oster): "Even if he had been over in the grassy area, you still would not have wanted him to remain there?"

> · Answer: *"No, sir, I wouldn't have. Not with the—not with what he was saying."*
> *Isaac Jarvis:*
> Transcript at 69:12–14:
> · Question (by Mr. Oster): "Do you believe that certain customers were upset with the message that Mr. Netherland was preaching?"
> · Answer: *"Well, some of them were."*
> *Brooke Peay:*
> Transcript at 61:23–24:
> · Question (by Mr. Hilburn): "What did you hear?"
> · Answer: *"He was yelling religious messages."*
> *Gene Magee:*
> Transcript at 95:18–20:
> · Question (by Mr. Oster): "Do you think that Mr. Netherland's message was upsetting to some of the patrons?"
> · Answer: *"I do believe."*
> Transcript at 99:10–21:
> · Question (by Mr. Oster): "If Mr. Netherland, tomorrow, were to go ... in The grassy area ... to preach a message that says drunkards are going to hell, would that be okay with you?"
> · Answer: *"Anything that harms my business, I don't want him to say."*
> Transcript at 99:22–25:
> · Question (by Mr. Oster): "So if Mr. Netherland was there promoting your business and not saying things that would harm the business, would that be okay?"
> · Answer: *"Sure it would, yes, sir."*

Defendants argue that a paramount content-neutral justification for the officers' actions were general safety concerns based upon Mr. Netherland's extremely close proximity to passing motorists while he yelled at the drivers near a busy intersection. According to the Defendants, the general traffic conditions were hazardous enough to require Mr. Netherland to refrain from standing on the narrow edge of the roadway.

Defendants' contend that the Seventh Circuit recently entertained a similar question in *Ovadal v. City of Madison,* 416 F.3d 531 (7th Cir.2005). The *Ovadal* plaintiff demonstrated against homosexuality by holding up sings on pedestrian overpasses. *Id.* at 533–34. Police officers responded to complaints by drivers that the signs were causing traffic problems by telling the plaintiff that he could no longer display his signs on pedestrian overpasses. The Seventh Circuit determined that concerns about traffic and pedestrian safety can present a content-neutral criteria for restricting speech.

However, *Ovadal* differs from the instant case. *Ovadal* involved a person holding signs over an overpass, not a person speaking on a grassy open easement near a bar. Unlike in *Ovadal,* where the plaintiff held signs that could distract a motorist who might take her eyes off the road, here, Mr. Netherland held no signs. Additionally, he stood on the unpaved shoulder's edge because Lt. Eubanks forced him to move there. *See* Transcript at 27–28; 112:14; 113:18; 114:20.

### 4. Strict Scrutiny

■ The Ordinance is subject to strict scrutiny. It is a content-based restriction on speech and thus can be upheld only if the government can produce a compelling interest that is narrowly drawn. *Perry*

*Education Ass'n. v. Local Educators' Ass'n.,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby,* 487 U.S. at 485, 108 S.Ct. 2495.

■ The City of Zachary does not have a compelling interest in enforcing a vague ordinance or in proscribing speech that some people consider too "annoying" or "offensive." While Defendants argue that the restriction on Mr. Netherland's speech was narrowly tailored to serve a significant governmental interest and left open alternative channels of communication, this Court is not persuaded that the restriction was narrowly tailored or that it served a significant governmental interest.

■ The government has no rational or compelling interest in using a content-based restriction to silence Mr. Netherland's views. Even if such views are unpopular, disquieting, annoying, or offensive, a compelling governmental interest is not achieved by threatening Mr. Netherland with arrest. *See, e.g., Coates v. Cincinnati,* 402 U.S. 611, 615, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Texas v. Johnson,* 491 U.S. 397, 398, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Religious speech cannot be silenced because it is controversial or offensive. *Capitol Square Review and Advisory Bd.,* 515 U.S. at 760, 115 S.Ct. 2440 (requiring state to permit Ku Klux Klan to erect a cross on state's open public forum).

Defendants maintain that Mr. Netherland's speech could harm Sidelines' business.[11] The Defendants offered no testimony, or other evidence to quantify this general concern, and even if true, it does not provide a compelling governmental interest. *See, e.g., NAACP v. Claiborne Hardware,* 458 U.S. 886, 102 S.Ct. 3409, 73

---

11. Transcript 95:1–12.

L.Ed.2d 1215 (1982). In *Claiborne Hardware*, civil rights protests, speeches, and other boycotting activities in the public forum had the effect of economically damaging the businesses of white merchants. The Supreme Court concluded that such activity, if nonviolent, was constitutionally protected expression. *Id.* at 907–08, 914–15, 102 S.Ct. 3409 (noting that "the petitioners certainly—and directly intended—that the merchants would sustain economic injury as a result of their campaign"). Indeed, even if Mr. Netherland preached with the goal of economically harming Sidelines' business—and Sidelines could show this, it would still be subject to First Amendment protections.

■ Additionally, the Ordinance is not narrowly tailored. It is vague and overbroad and there are less restrictive means available to further any compelling government interest. Courts have found that vagueness demonstrates an ordinance's lack of narrow-tailoring. A recent district court decision from the Western District of Texas held that even if the government could identify a compelling interest in enforcing an ordinance, an ordinance is not narrowly tailored to achieve those interests if it suffers from vagueness and overbreadth. *See Villejo v. San Antonio*, 485 F.Supp.2d 777, 783 (W.D.Tex.2007).[12]

■ A law is unconstitutionally "overbroad for First Amendment purposes when, even though it is directed at unprotected speech, it can also be applied to protected speech." *Collin v. Smith*, 447 F.Supp. 676 (D.C.Ill.1978). "Such a law is considered completely unconstitutional on its face even though it is capable of application in a constitutional manner, on the theory that the very existence of laws which can be applied to protected speech exercises an unacceptable inhibiting effect on free debate." *Id.*

Indeed some expression, such as fighting words, may be so disruptive and inflammatory that it may be constitutionally restricted. However, the Ordinance in question can be used—as it was here—to prohibit protected speech, including words that "offend" or "annoy" listeners. Thus, the Court finds that it is overbroad because it may restrict speech that is constitutionally protected, as well as speech that is not.

Furthermore, if the Ordinance is intended to prohibit "disturbing the peace," it does not specify a decibel or wattage level for conduct that is so loud a disruption may result. In fact, where a Louisiana noise statute specifically defined excessive disruptive noises by decibel level, a sister court struck down the statute as overbroad. *See Lionhart v. Foster*, 100 F.Supp.2d 383, 387–88 (E.D.La.1999). The Ordinance under review here does not specifically set out an inappropriate decibel level, but rather prohibits any controversial "noise or exclamation" which police consider so "annoying" or "offensive" to listeners that a disturbance may result. Here, the Ordinance is even more overbroad than that which the court struck down in *Lionhart*. Like the *Lionhart* ordinance, the Ordinance here has "permitted persons to be punished for merely expressing unpopular views." *Id.* at 389 (quoting *Grayned v. Rockford*, 408 U.S. 104, 113, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

---

**12.** The *Villejo* plaintiff, a city employee, wished to participate in upcoming municipal bond measure elections. An Administrative Directive, however, prohibited city employees from participating in city-sponsored "measure" or "issue" elections. The court held that "[e]ven assuming the City has identified compelling interests in preventing its employees from participating in measure elections, the Directive is not narrowly tailored to achieve those interests ... [because the] Directive suffers from both vagueness and overbreadth". *Villejo*, 485 F.Supp.2d at 783.

 It should also be noted that Zachary Code Ordinance § 58–93.2 includes five other subsections which cover situations that unlawfully disturb the peace. The loss of subsection (a)(2) does not do away with the other subsections, which achieve Zachary's goal in a constitutional, and less restrictive way.[13]

## I. Free Speech and the "Right to be Let Alone"

Defendants argue that people have the "right to be let alone;" and that being secure in that right involves not only freedom from physical assaults but from psychological attacks that can cause young people to question their self-worth and their rightful place in society. *Harper v. Poway Unified School Dist.*, 445 F.3d 1166 (9th Cir.2006). Defendants pin much of their argument on unnecessarily lengthy quotes from *Hill v. Colorado*, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). A statute in *Hill* made it "unlawful for any person within 100 feet of a health care facility's entrance to 'knowingly approach' within 8 feet of another person, without that person's consent, in order to pass 'a leaflet or handbill to, displa[y] a sign to, or engag[e] in oral protest, education, or counseling with [that] person....'" *Hill*, 530 U.S. at 707, 120 S.Ct. 2480.

This Court does not disagree with *Hill*, and this ruling does not diminish its importance in anyway. However, *Hill* differs from this matter in several distinguishable ways. Most notably, the *Hill* ordinance did not apply to all businesses, but only to healthcare facilities. Additionally, "the legislative history makes it clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics...." *Id.* at 715, 120 S.Ct. 2480. The Supreme Court found a special interest in protecting access to medical/abortion facilities for the "health and safety" of citizens, focusing on the need for "unimpeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational protests." *Id.* It is clear that the statute in *Hill* was narrowly tailored for the special situation of medical/abortion facilities, where people often have no choice but to visit, and where people face health anxieties. Furthermore, the statute was only protective of people approaching within 8 feet of others, indicating that it was not the sound of the speakers' speech which was the problem, but the direct face-to-face confrontation. The statute was also only protective within 100 feet of a health facility's entrance, indicating that similar concerns were unnecessary for other general businesses. It

---

**13.** Even if the Court were to find Defendants' restriction on Mr. Netherland's speech content-neutral, it would likely not pass constitutional muster. While content-neutral restrictions in traditional public fora are scrutinized under a less exacting narrow tailoring requirement, one still must "promote a substantial governmental interest that would be achieved less effectively absent the regulation, [where] the means chosen are not substantially broader than necessary to achieve that interest." *See Ward v. Rock Against Racism*, 491 U.S. 781, 782–83, 798–99, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

Under the standard articulated, overbroad restrictions on speech that allow for arbitrary enforcement are not narrowly tailored. "Government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming means of suppressing a particular point of view.'" *Forsyth*, 505 U.S. at 130, 112 S.Ct. 2395 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)). The Ordinance in question leads to arbitrary enforcement, since it requires the subjective application of words such as "annoying" and "offensive."

did not broadly apply to any "public place" like the Zachary Ordinance.[14]

Outside of the context of healthcare and abortion facilities, the Supreme Court has been more protective of free speech rights in comparison to the alleged right to be let alone. In *Texas v. Johnson*, 491 U.S. 397, 398, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the Court struck down an ordinance that prohibited desecration of the U.S. or a state's flag. The Court emphasized that speech cannot be restricted because it "causes serious offense to others." *Id.* Thus, even if Mr. Netherland's speech was highly offensive, it is protected in traditional public fora, and the government "may not prohibit the verbal or nonverbal expression of an idea merely because society finds the idea offensive or disagreeable. . . ." *Id.*

In an attempt to persuade this Court that Mr. Netherland's speech is not protected speech, the Defendants argue that Mr. Netherland's preaching constituted "fighting words." Defendants claim that they threatened Mr. Netherland with arrest "due to a serious concern . . . that some annoyed and upset patron(s) may harm Netherland." (Doc. 32, p. 4; Transcript at 103:11). Even if this is true, the Defendants did not properly respond because "even where the audience is so offended by the ideas being expressed that it becomes disorderly and attempts to silence the speaker, it is the duty of the police to attempt to protect the speaker, not to silence his speech if it does not consist of unprotected epithets." *Id.* at 690.

In 1942, the Supreme Court held that "fighting words" are not constitutionally

protected. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Defendants analogize the instant case to *Gilles v. Davis*, 427 F.3d 197 (3rd Cir.2005) and *Gilles v. State of Indiana*, 531 N.E.2d 220 (Ind.App. 4 Dist., 1988). These cases involving a street preacher named James Gilles may be distinguished because Gilles used hateful slurs and epithets directed at individuals by calling people "fuckers," "whores," and "queers." *Gilles*, 531 N.E.2d at 222. In the 2005 *Davis* case, the Third Circuit held that Gilles' speech toward a woman constituted "fighting words" when he called a woman a "Christian lesbo" and "lesbian for Jesus" and when he asked her whether she "lay down with dogs" or whether she was "a bestiality lover." *Gilles*, 427 F.3d at 205. As the Court has noted above, Mr. Netherland preached by quoting from the Bible. Though one witness claims to have heard Mr. Netherland call someone a "fornicator," Mr. Netherland testifies that he does not call people names, but rather quotes Bible verse.[15]

### B. Due Process

An ordinance is void for vagueness under the due process clause of the Fourteenth Amendment "unless it provides fair warning of prohibited conduct and explicit standards for enforcement." *Lionhart*, 100 F.Supp.2d at 388–89 (citing *Reeves v. McConn*, 631 F.2d 377, 383 (5th.Cir.1980)). Vague laws violate the principle that the law gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Id.* (citing *Grayned*,

---

**14.** *Hill* does not advance the Defendants' argument as much as it does the Plaintiff's. It recognizes that any right to be left alone "is far less important when 'strolling through Central Park' than when 'in the confines of one's own home,' or when persons are 'powerless to avoid' it." *Id.* at 716, 120 S.Ct.

2480. Mr. Netherland was preaching in a traditional public forum, not forcing his way into the most private spheres of individuals' lives.

**15.** *See,* Note 2, *supra.*

408 U.S. at 108, 92 S.Ct. 2294). The void-for-vagueness doctrine "also aims at arbitrary and discriminatory enforcement." *Id.* (citing *Kramer v. Price,* 712 F.2d 174, 176 (5th Cir.1983)). "A statute or ordinance offends the First Amendment when it grants a public official 'unbridled discretion' such that the official's decision to limit speech is not constrained by objective criteria, but may rest on 'ambiguous and subjective reasons.'" *United Food & Comm. Workers Union v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341 (6th Cir.1998) (citing *Desert Outdoor Advertising, Inc. v. Moreno Valley,* 103 F.3d 814, 818 (9th Cir.1996), *cert. denied,* 522 U.S. 912, 118 S.Ct. 294, 139 L.Ed.2d 227 (1997)).

■■■ The subsection of the Zachary Code Ordinance at issue contains the words "annoying," "offensive," and "derisive." It does not clearly delineate what conduct is impermissible to either the public or to law enforcement officials. The terms fail to provide objective, discernable meaning. Speech that is considered "annoying" or "offensive" varies by individual opinion. One wishing to go to a public place and speak cannot know what type of speech will be prohibited in Zachary, and the terms of the Ordinance give way to arbitrary enforcement by police.

The Supreme Court has held that the government cannot make criminal the exercise of the First Amendment rights "simply because the exercise may be 'annoying' to some people." *Coates,* 402 U.S. at 615, 91 S.Ct. 1686. In *Coates,* the Court found impermissibly vague a "disorderly assembly ordinance," much like the disturbing the peace ordinance at issue. *Id.* at 614, 91 S.Ct. 1686. The *Coates* ordinance prohibited the assembly of persons who conduct themselves "in a manner annoying to persons passing by." *Id.* at 612, 91 S.Ct. 1686. The Court held that such a prohibition "contains an obvious invitation to discriminatory enforcement against those whose association together is 'annoying' because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens." *Id.* at 615, 91 S.Ct. 1686.

The *Lionhart* Court also relied on the *Coates* principle in striking down as impermissibly vague a Louisiana statute that prohibited "annoying" noises above a certain decibel level. *Lionhart,* 100 F.Supp.2d at 385. Like the court in *Lionhart,* this Court, too, relies on and applies the *Coates* rationale. Indeed annoying conduct has a different meaning for different people. Conduct that annoys some does not annoy others. Thus, Zachary Code Ordinance § 58–93.2(a)(2) is vague not because it requires a person to conform his conduct to an imprecise but comprehensive normative standard, and yet no standard of conduct is specified at all. *Id.* at 389.

The terms in question call for subjective judgments. An enforcing officer must rely on his own subjective views of what constitutes "annoying" or "offensive" speech, or he must consider what he believes others might find "annoying" or "offensive." The result of this reliance leads an officer, like Mr. Eubanks, to act under the Ordinance in a manner based on his or her own arbitrary judgment.

Defendants argue that it is Mr. Netherland's "conduct" and not simply his "message" that is being prohibited, and such restrictions on "conduct" are permissible. This distinction was rejected under *Coates.* The ordinance struck down in *Coates* expressly prohibited conduct and not just annoying religious messages.[16] The Su-

---

**16.** The Supreme Court stated in *Coates:*

We are thus relegated ... to the words of the ordinance itself. If three or more people

preme Court in *Coates* did not differentiate between conduct and messages. It found that a city cannot prohibit even expressive conduct that annoys others, because of the inherent vagueness of the term "annoying." *Id.*

### C. Free Exercise of Religion

■ If a "hybrid" claim of free exercise and other fundamental right is implicated, increased scrutiny is warranted. *Employment Division v. Smith,* 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Here, Mr. Netherland was enjoying his right to free exercise and free speech, and thus, the hybrid rights exception to *Smith* applies.

In *Chalifoux v. New Caney Independent School District,* 976 F.Supp. 659, 671 (S.D.Tex.1997), a district court considered whether a public school's policy of keeping students from wearing rosaries to suppress gang activity was constitutional under free exercise and free speech protections. The court found the two protections to constitute a hybrid claim:

> Plaintiffs' causes of action combine free exercise of religion and free speech claims; accordingly, the heightened level of scrutiny used in hybrid cases applies. Therefore, pursuant to the holding in *[Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ], this Court must perform a balancing test to determine whether the school's regulation places an "undue burden" on Plaintiffs' religious exercise and whether the regulations bears more than a "reason-

able relation" to [the school's] stated objective.

*Id.*

■ Here, it is clear that Zachary has placed an undue burden on Mr. Netherland because he is prohibited from exercising his sincerely held religious beliefs. Mr. Netherland's undue burden outweighs Defendants' interest in enforcing its Ordinance. Zachary has no legitimate governmental interest in restricting speech that is too "annoying" or "offensive" to listeners. To wit, the Ordinance uses vague terms and there are less restrictive means to ensure public order. Under the balancing test described in *Chalifoux,* this Court finds that Mr. Netherland's fundamental rights to free speech and free exercise prevail.

### III. Irreparable Injury

■ When a Plaintiff loses First Amendment freedoms, even for a minimal period of time, he has suffered irreparable injury, and a court may grant injunctive relief. *Deerfield Med. Ctr. v. Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981)(citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Defendants have not removed the threat of arrest against Mr. Netherland. They continue to violate his constitutional rights by prohibiting his religious message on the public easement near *Sidelines* and on other traditional public fora in Zachary. As long as Mr. Netherland is threatened with

---

meet together on a sidewalk or street corner, they must conduct themselves so as not to annoy any police officer or other person who should happen to pass by. In our opinion this ordinance is unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct.

It is said that the ordinance is broad enough to encompass many types of conduct clearly within the city's constitutional power to prohibit. And so, indeed, it is. The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct ... *Coates,* 402 U.S. at 614, 91 S.Ct. 1686.

**522**

arrest, the harm suffered by him continues to grow.

## IV. Balance of Harms

■ In the absence of injunctive relief, Mr. Netherland will continue to suffer deprivation of his fundamental rights. Conversely, Defendants will suffer no harm in allowing Mr. Netherland to speak on public fora in Zachary. The only difference between Mr. Netherland's speech and permitted speech is that the government considers Mr. Netherland's speech too "annoying" and "offensive."

## V. Public Interest

■ Courts hold that "any public interest in allowing [legitimate government activities] does not extend so far as to allow arbitrary and capricious actions that interfere with the exercise of fundamental rights." *Deerfield Med. Ctr.*, 661 F.2d at 338–39. The First Amendment is so fundamental to prohibiting the type of encroachment which took place here, that injunctive relief will protect the public interest more so than disserve it.

### *Conclusion*

For the foregoing reasons, the Court finds Zachary Code Ordinance § 58–83.2 unconstitutional on its face. The Plaintiff's application for a preliminary injunction is hereby **GRANTED.** It is therefore ordered that the City of Zachary, and its officers, agents, assigns, and employees, are hereby **ENJOINED** from enforcing Zachary Code Ordinance § 58–93.2.